SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY
*v.* GARRIGAN.

## Opinion delivered April 21, 1913.

1. TELEPHONE COMPANIES—REFUSAL OF SERVICE—DISCRIMINATION—NEGLIGENCE—QUESTION FOR JURY.—In an action against a telephone company to recover a statutory penalty for alleged discrimination in failing or refusing to furnish telephone service, evidence held sufficient to warrant submission to jury of question whether defendant company was guilty of discrimination or mere negligence. (Page 613.)

2. TELEPHONE COMPANIES—FAILURE TO FURNISH SERVICE—PENALTY.— The statute which inflicts a penalty upon a telephone company for failure to furnish service to its subscribers, inflicts the penalty only for wilful discrimination and not for negligence in merely failing to furnish service, temporarily. (Page 614.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk*, Judge; reversed.

*Walter J. Terry* and *A. P. Wozencraft*, for appellant.

Before a person can recover a penalty under the statute, he must show a wilful and intentional discrimination or refusal of service. Acts 1885, p. 176; 76 Ark. 124; 100 Ark. 546.

*Danaher & Danaher*, and *Dan W. Jones*, for appellee.

The testimony shows a wilful discrimination or refusal of service.

A telephone company can not refuse service to a subscriber until he pays a debt contracted for services rendered in the past. 94 Ark. 533; 29 Ark. Law Rep. 757.

McCULLOCH, C. J. This is an action instituted by P. H. Garrigan against the Southwestern Telegraph & Telephone Company to recover the sum of $100.00 as statutory penalty for alleged discrimination in failing or refusing to furnish telephone service for a period of one day.

Defendant appeals from a judgment of the court rendered upon an instructed verdict.

The question presented, therefore, is whether the undisputed facts establish discrimination against the

plaintiff so as to warrant the recovery of the statutory penalty.

The plaintiff resides in the city of Little Rock, and has been one of defendant's subscribers for several years, having a telephone in his residence.

The alleged discrimination occurred on July 19, 1912, and, according to the undisputed evidence, the plaintiff had paid his bill for that month's service. He and his daughter testified as witnesses in the case, and their testimony tended to establish the fact that they had endeavored to use the telephone, but that they were denied service by the operator on the ground that the bill for service had not been paid. Plaintiff, himself, testified that when he called up, the operator said, "You can't talk over this 'phone; you will have to go to some place else. Your 'phone is discontinued." His daughter testified that when she called the central office, the operator informed her that she could not have the service because her father owed for a back bill. The connection was restored the next morning, and thereafter the service was furnished as usual.

Defendant introduced as witnesses several of its various employees, including the district traffic chief and his assistant, and the one who served as chief operator on the occasion named. It appears from the testimony of those witnesses, that there are two methods of discontinuing service. One is, where there is a temporary discontinuance at the request of the subscriber. This condition is indicated to the operator by placing a white peg or plug in the multiple on the switchboard in the central office, and it is notice to the operator that service with that telephone is discontinued at the request of the subscriber. A daily record is kept of the condition of the service with reference to each 'phone, and a temporary discontinuance is indicated on the record by the letter "W" placed opposite the number of the telephone. Only in extreme emergency is the operator permitted to allow that telephone to be called. Where the telephone is disconnected on account of failure to pay a

bill, the condition is indicated to the operator by placing a metal guard over the signal lamp on the switchboard. When that condition is indicated, it is the duty of the operator, when a call is received from that number, to connect it with the cashier's office. Men in what is termed the plant department have charge of putting guards over the signal lamps, but the white plugs or pegs are put in by the operators, who constitute what is termed the traffic department. When an operator begins work for the first time she is instructed about those different signals and their meaning.

The evidence adduced by the defendant in this case shows that when the effort was made by plaintiff and members of his family to use the telephone on July 19, there was a white plug, indicating temporary discontinuance at the request of the subscriber. In fact, there is no dispute about this, and the evidence further shows that there was a "W" on the record, indicating the temporary discontinuance. It is also undisputed that this was a mistake on the part of somebody connected with the operation of the telephones, as the plaintiff had not requested its discontinuance. There is no explanation given in the testimony as to how the mistake was made in putting in the white plug, indicating the discontinuance of plaintiff's telephone; but it is conceded that this occurred through a mistake on the part of some one. Defendant's witnesses contend that the mistake was discovered by a physician calling up and insisting on connection with plaintiff's telephone. That is disputed by the plaintiff. In this state of the proof, it was not proper to take the case away from the jury by a peremptory instruction. The statute which imposes the penalty is directed against discrimination only, and not for mere negligence in temporarily failing to give service. *Yancey* v. *Batesville Telephone Co.*, 81 Ark. 486; *Southwestern Telegraph & Telephone Co.* v. *Murphy*, 100 Ark. 548.

According to the defendant's evidence, there is nothing in this case except a mistake on the part of the employees which caused a temporary discontinuance of

plaintiff's telephone service for a period of one day, and that as soon as the error was called to the attention of those in charge of the office, it was corrected and the service was restored. If the jury accepted the statements of defendant's witnesses as the facts of the case, and believed that there was no wilful or unjustifiable refusal to furnish service as indicated by the testimony adduced by the plaintiff, then the verdict should have been for the defendant.

In *Southwestern Telegraph & Telephone Co.* v. *Murphy, supra,* we said:

"The manifest purpose of the statute is to inflict a penalty on a telephone company, not for negligence or inattention in failing to repair its instrumentalities for supplying service, but for wilful refusal to furnish telephone connections and facilities without discrimination or partiality to all applicants who comply or offer to comply with the rules. The statute forbids discrimination, and mere neglect or inattention in repairing instruments does not constitute that."

For the error, therefore, in giving the peremptory instruction, the judgment is reversed and the cause is remanded for a new trial.