HILL *v.* SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY.

Opinion delivered February 15, 1915.

TELEPHONE COMPANIES—SERVICE TO PATRONS—GOOD FAITH.—In an action against a telephone company to recover penalties for a refusal to furnish telephone service, the issue is whether or not there has been a wilful refusal, or whether the failure to furnish service resulted on justifiable grounds, or from an honest mistake of fact; the issue is as to the company's good faith or wilfullness in the failure or refusal to furnish service.

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed.

*M. Danaher* and *Palmer Danaher,* for appellant.

This is a clear case of discrimination, and the court erred in directing a verdict. 192 Fed. 200; 110 Ark. 484; 102 *Id.* 551.

*Walter J. Terry,* for appellee; *A. P. Wozencraft,* of counsel.

Penal statutes apply only to intentional and wilful discrimination and not to errors, mistakes or delays. Appellee was acting in good faith and thought it owned the line. 76 Ark. 124; 101 *Id.* 600; 100 *Id.* 546; 107 *Id.* 611; 58 *Id.* 490; 110 *Id.* 484; 192 Fed. 200; 109 Ark. 35; 103 *Id.* 564.

McCULLOCH, C. J. Appellant instituted this action against appellee, the Southwestern Telegraph & Telephone Company, to recover statutory penalties for alleged discrimination in refusing to furnish telephone service during the period named in the complaint. Appellant resided at Sulphur Springs, in Jefferson County, Arkansas, a few miles distant from the city of Pine Bluff, where there was a telephone system operated by appellee's predecessor, the Pine Bluff Telephone Company. Appellant

alleges that he constructed a private line from Sulphur Springs to the corporate limits of Pine Bluff and was permitted to connect with the system of the Pine Bluff Telephone Company and use the service at the rate of $3 per month for the telephone in his store and $2 a month for the telephone in his residence, and that other residents of Sulphur Springs and thereabouts were furnished service at the same rate. He alleges that appellee purchased the system of the Pine Bluff Telephone Company and thereafter continued to furnish telephone service to other patrons similarly situated to appellant in and about Sulphur Springs on the same terms as formerly given by the Pine Bluff Telephone Company, but refused to furnish service to appellant on those terms and imposed a charge of $9 a month for telephone service in his store and $8 a month in his residence, which was prohibitory.

Appellee denied that there was any discrimination against appellant, but alleged that the line used by appellant was in fact owned by appellee's predecessor, the Pine Bluff Telephone Company, and was within the terms of the conveyance of that company to appellee, and that there was no discrimination for the reason that the persons in and about Sulphur Springs who were given the old rate owned their private lines over which the service was furnished. The case was tried before a jury and the court gave a peremptory instruction upon appellant's own testimony, holding that it was insufficient to make out a case of discrimination. Appellee did not introduce any testimony.

Appellant testified that he owned the line and had been given service at the rate of $3 for telephone in his business house and $2 in his residence, the same as to other patrons in that locality; that when the Pine Bluff Telephone Company sold out to appellee, the manager of appellee came out to Sulphur Springs and informed appellant that he would be charged $9 for the telephone in his store and $8 for his residence, and gave as a reason for it that the company owned the line, and not appellant, and that the orders from the officers of the company at

Little Rock were to charge appellant the advanced rate. Appellant testified that he protested against it and informed the manager positively that he owned the line and was entitled to the reduced service given to others.

The point of difference between the parties was with respect to the ownership of the line used by appellant from the corporate limits of Pine Bluff to Sulphur Springs. The contention of appellee is that it purchased from the Pine Bluff Telephone Company the line used by appellant, and was informed at the time of the purchase that the line was owned by the Pine Bluff company. Appellee undertook to justify the charge of the advanced rate on the ground that it was a rate fixed applicable to all persons on rural routes where the lines were not owned by the patrons. Under those circumstances there was a fixed charge for 'phone rent and what they called a radius charge based upon mileage. It is clear under the evidence that if the company owned the line to Sulphur Springs there was no discrimination in the charge sought to be imposed on appellant; on the other hand, if appellant owned the line himself, he was entitled to service at the rate of $3 for the 'phone in business house and $2 in residence, the same as other patrons in that locality. Now, there was no testimony adduced by appellee tending to support its contention that it owned the line to Sulphur Springs or that it had any reason to believe that it owned the line. On the contrary, the uncontradicted testimony adduced by appellant showed that he owned the line to Sulphur Springs which he had been using, and that from the very first moment his service was withdrawn he informed the manager of his ownership and protested against the advanced rate. Notwithstanding his protest, service was refused at the old rate for about a month, and then after appellant had produced a written statement from the manager of the former company to the effect that it did not claim ownership of the private line to Sulphur Springs, the service was promised to appellant at the old rate but was not given for several weeks.

We have construed the statute under which appellant seeks to recover a penalty, and in regard to it said: "The manifest purpose of the statute is to inflict a penalty on a telephone company, not for negligence or inattention in failing to repair its instrumentalities for supplying service, but for wilful refusal to furnish telephone connections and facilities without discrimination or partiality to all applicants who comply with the rules. The statute forbids discrimination, and mere neglect or inattention in repairing instruments does not constitute that." *Southwestern Tel. & Tel. Co.* v. *Murphy,* 100 Ark. 546.

In the *Danaher* cases, 94 Ark. 533, 102 Ark. 547, we held that a refusal to furnish service based upon an effort to enforce an unreasonable regulation constituted discrimination which authorized a recovery under the statute. In those cases the suit was based on refusal to furnish service because the applicant had refused to pay a disputed bill for former service, and we held that the company had no right to refuse service in order to enforce the payment of a past due bill.

In the case of *Southwestern Telegraph & Telephone Company* v. *Garrigan,* 107 Ark. 611, we reiterated the doctrine of the *Murphy* case, *supra,* and held that where the testimony showed that the failure to furnish service was the result of misunderstanding or accident it was improper to take the case from the jury and instruct a verdict against the telephone company. The question in each case of this sort is whether or not there has been a wilful refusal or whether the failure to furnish service resulted on justifiable grounds or from an honest mistake of fact. It involves, in other words, the question of good faith or wilfulness in the failure or refusal to furnish service.

We are of the opinion that in this case the testimony adduced by appellant warranted a submission of that issue to the jury. The evidence was sufficient to sustain a finding that appellant owned the private line which entitled him to service at the old rate, the same as given to other patrons; that the company was fully informed of

that fact, and, in order to force him to pay the advanced rate, refused to furnish him service.

Under the testimony as adduced, if believed, the jury might have found that the claim by appellee to the ownership of the private line used by appellant was a mere pretext put forth for the purpose of exacting an exorbitant rate from appellant. In testing the legal sufficiency of the testimony, we must draw the strongest reasonable inference which is warranted.

The court erred in taking the case from the jury, and the judgment is reversed and the cause is remanded for a new trial.