SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY
*v.* DANAHER.

Opinion delivered February, 12, 1912.

1.  TELEPHONE COMPANIES—AUTHORITY TO MAKE REGULATIONS.—A telephone company has the right to make and enforce reasonable rules and regulations for the guidance of its subscribers, and, in case a subscriber refuses to obey such regulations, may refuse to furnish telephone service, without being guilty of discrimination.  (Page 550.)

2.  SAME—REASONABLENESS OF RULE.—It is not a reasonable regulation for a telephone company to refuse to furnish telephone connection to one until he pays a debt contracted for services rendered in the past which he claims he does not owe.  (Page 551.)

3.  APPEAL AND ERROR—FORMER DECISION.—A decision on a former appeal is the law of the case.   (Page 551.)

4.  TELEPHONE COMPANIES—REASONABLENESS OF RULE.—A telephone company can not make a regulation whereby it would charge a subscriber who is in arrears to it for past services a greater sum for telephone services than it charges those who have kept their bills paid. (Page 552.)

5.  SAME—DUTY TO THE PUBLIC.—Telephone companies, by the necessities of commerce and by public use, have become common carriers of communications, and as such must supply all alike who are similarly situated.   (Page 552.)

Appeal from Pulaski Circuit Court; Second Division; *F. Guy Fulk,* Judge; affirmed.

STATEMENT BY THE COURT.

This action was here on a former appeal and is reported under the style of *Danaher* v. *Southwestern Telegraph & Telephone Company,* 94 Ark. 533.  The action is for a recovery of the statutory penalties, under section 7948 of Kirby's Digest,

for an alleged discrimination against the plaintiff in refusing her telephone service.

The controversy arose because the defendant company refused plaintiff telephone service until she should pay a claim for past due services, which the defendant contends she owed, and which the plaintiff insists she did not owe. Reference is made to the former decision for a more extended statement of the issues. After the case was remanded for a new trial, substantially the following testimony was introduced:

For several years prior to March 30, 1908, the plaintiff had a telephone in her residence in the city of Little Rock; on the date mentioned it was disconnected from the exchange and remained disconnected until the 8th day of May. During this time plaintiff tried to get the central office every day but got no response. The reason for doing this was because the telephone company refused her further service until she should pay a claim it had against her for past due services, which she contended she did not owe. She paid $2 to the defendant company at its office in Little Rock on March 13, 1909, and said that she paid this for services for the month of March. Commencing with the month of April, service for telephone in residences was raised to $2.75 per month, but subscribers were given a rebate of fifty cents when they paid before the 15th of the current month. The plaintiff tendered $2.25 at the office of the company before the 15th of April, but the defendant told her that she was not entitled to the discount unless she paid the back bill, and on the 29th day of April, she paid $2.75 to the company. On the 2d day of May she went to the office of the company and told them that she wanted to pay for that month. She first offered to pay $2.25, but they told her that she was not entitled to the 50 cents discount unless she paid its claim for past services. She then paid the company $2.75 and told them that it was for the month of May.

The following agreed statement of facts was also introduced:

"It is agreed that during the months of April and May, 1908, the defendant had in operation in Little Rock, Arkansas, more than five thousand telephones, a majority of which were in private residences; that under the rules of the defendant during these months all residence telephone subscribers were

charged $2.75 per month, from which a deduction of fifty cents a month was made in all cases where the rentals were paid by the subscriber on or before the 15th day of said month.

"It is agreed as a fact in the case that the defendant telephone company cut off plaintiff's telephone on the 30th of March, 1908, and refused to give plaintiff further telephone service thereafter for the reason that the defendant claimed that the plaintiff owed it for telephone service theretofore rendered, which claim on the part of the telephone company was disputed by the plaintiff, she claiming that she did not owe the telephone company for any service rental in the past."

The jury returned the following verdict:

"We, the jury, find a verdict in favor of the plaintiff, as follows: "From March 30 to May 8, 1908, inclusive, making forty days at $100 (one hundred dollars) per day, for nonservice, making $4,000 (four thousand dollars), and, from May 9 to May 31, 1908, inclusive, twenty-three days at $100 (one hundred dollars) per day, making $2,300 (twenty-three hundred dollars) for discrimination. Making a total verdict of $6,300 (sixty-three hundred dollars) in favor of plaintiff."

From the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Walter J. Terry, A. P. Wozencraft* and *Coleman & Lewis,* for appellant.

1. The issues determined on the former appeal (94 Ark. 533) were wholly different and distinct from those raised in the present record. This is a suit for a statutory penalty (Kirby's Digest, § 7948), for discrimination against plaintiff.

2. As to the common law rule of liability of *quasi*-public corporations, see 160 Fed. 316; 66 Md. 399; 105 Ind. 250; 106 *Id.* 1; 61 S. C. 83; 71 S. W. 435. There was also a remedy by mandamus. Jones on Tel. & Tel. Companies, § 495; 61 S. C. 83; 17 Neb. 126; 45 Barb. 136. Also by injunction. 117 Fed. 726; Jones Tel. & Tel. § 496.

3. For decisions on statutes like ours see 160 Fed. 316; 72 Ark. 478; 81 Ark. 486. No rule can be laid down by which the credit to which each person is entitled can be determined.

4. The regulations of the company were reasonable; they applied to *all* delinquents; and there was no discrimination

against plaintiff. 160 Fed. 332; 117 N. W. 780; 40 Ark. 97; 45 *Id.* 158; 63 S. W. 785; 25 App. Cas. (D. C.) 443; 148 Cal. 490.

*Dan. W. Jones, W. S., M.* and *Palmer Danaher,* for appellee.

1.   94 Ark. 533, settles all questions and issues raised here.

2.   It is a discrimination to refuse service on the ground of a failure to pay for past service.   94 Ark. 533; 140 S. W. 720.   The case of 160 Fed. 316, is not in point, as the court only held that conduct which would not amount to an illegal discrimination at common law would not be an illegal discrimination under the statute.

3.   Where the law fails to fix a reasonable rate, the courts must decide.   41 Am. St. Rep. 283; 94 U. S. 155; 125 *Id.* 680; 55 Ark. 65; 21 L. R. A. 787.   Such statutes are constitutional.   129 U. S. 26; 17 L. R. A. 286; 207 U. S. 73; 24 L. R. A. 504; 86 Ark. 115.

4.   Plaintiff was entitled to the same treatment as all others.   5 A. & E. Enc. (2 ed.) 166; 57 Am. St. 546.

HART, J., (after stating the facts).   The telephone company has the right to make and enforce reasonable rules and regulations for the guidance of its subscribers, and, in case the subscriber refuses to obey such regulation, may refuse to furnish telephone service, without being guilty of discrimination, and such right was recognized by the court on the former appeal of this case.   We held in addition, on the former appeal, that where a subscriber refuses to pay charges for past services but properly asked the telephone company to reinstate his telephone in his residence, his demand for reinstatement is not barred by his refusal to pay for past service which he claims he does not owe. Mr. Justice BATTLE, speaking for the court, said:

"A telephone company, being a public servant, can not refuse to serve any one of the public in that capacity in which it has undertaken to serve the public when such one offers to pay its rates and comply with its reasonable rules and regulations.   It can not refuse to serve him until he pays a debt contracted for services rendered in the past.   For the present services, it has a right to demand no more than the rate of

charge fixed for such services. It transcended its duty to the public when it demanded more. (Citing authorities.)

"A tender or payment to the telephone company of its rate or charge for service or rent of telephone for any particular time and offer to comply with its reasonable rules and regulations would entitle the applicant to such service or rent. Should the telephone company incur a penalty by refusing to rent or render such service, it could prevent the increase thereof by rendering or offering to render the applicant such service." *Danaher* v. *Southwestern Tel. & Tel. Co.*, 94 Ark. 533.

The decision on the former appeal is the law of the case. Therefore, under the undisputed evidence as disclosed by the record, and as stated above, we think the present appeal is controlled by the decision on the former appeal.

Counsel for the defendant with great earnestness and with much force have undertaken to escape this conclusion. The effect of their argument, as we understand it, is that there is no discrimination under the statute where the defendant enforces an unreasonable rule against all who refuse to obey it, but that discrimination arises where the company enforces an unreasonable rule against some and not all, of its subscribers who refuse to obey it. The fallacy of their argument is that by such a course the defendant, by enforcing an unreasonable rule against all of its subscribers who refuse to obey it, could entirely abrogate the statute, release the defendant from the penalties expressly prescribed by the statute, and remit subscribers who refuse to obey its unreasonable rules to their remedy by mandamus or such other remedy as might be available under the common law. They contend that telephone companies under the common law are prohibited from making discrimination in the performance of the service required of them, and that section 7948 of Kirby's Digest is merely declaratory of the common law. This may be true, but it is equally true that the object and purpose of the statute is to compel telephone companies to perform the duties required of them, both in supplying telephone service and in preventing discrimination to its subscribers. Having held on the former appeal that a telephone company can not refuse to furnish telephone connection to one until he pays a debt contracted for services rendered in the past, it seems to us that it neces-

sarily follows that the plaintiff is entitled to recover for the forty days during which her telephone was disconnected and telephone service was refused her. She was ready, willing and able to pay and did pay for the service, and was in the same situation as all other persons who had telephones installed in their residences.

In regard to the twenty-three days subsequent to the 8th of May, the defendant did render her services, but charged her fifty cents more than it did to other subscribers for residence telephones. They say they did this for two reasons: First, because she refused to pay their claim for past services, and second, because under their rules they allowed no discount to subscribers who were in arrears for past services. It follows from the ruling in the former appeal that the defendant could not make a rule or regulation whereby they would charge a subscriber who was in arrears to them for past services a greater sum for telephone services than it did for those who had paid their bill. The evidence shows that all persons having telephones in their residences received a discount of fifty cents if they paid for the service before the 15th of the month. The plaintiff belonged to this class of persons, and it was a discrimination against her to charge her more than it did other persons who had telephones in their residences. See, also, *Southwestern Tel. & Tel. Co.* v. *Murphy*, 100 Ark. 540.

Telephone companies, by the necessities of commerce and by public use, have become common carriers of communications, and as such must supply all alike who are alike situated, and can not discriminate in favor of or against any one. The plaintiff, as above stated, was a resident of the city, and, as above stated, was ready and willing and able to pay for the reinstallation of telephone service in her residence and did pay for the same. Therefore, she was in a similar situation to all other persons who were receiving telephone service in their residences, and, as stated in our former opinion, the telephone company could have obviated the payment of a penalty in this case by rendering to the plaintiff the telephone service.

The judgment will be affirmed.