## HARBAUGH *v.* CITIZENS TELEPHONE CO.

1. TELEGRAPHS AND TELEPHONES—NEGLECT TO FURNISH SERVICE—TORT ACTION—ASSUMPSIT.

   A declaration in trespass on the case against a telephone corporation, setting up a contract for service with the defendant telephone company, and alleging that the defendant wrongfully, maliciously, unjustly, carelessly and negligently refused to connect plaintiff's telephone with the city exchange of the defendant during a week named, charging loss of business, inconvenience, etc., sounded in tort and stated a recognized cause of action for which damages were recoverable.

2. DAMAGES—CONTRACTS—TELEPHONES.

   In such an action compensatory damages include all other damages than punitive, thus embracing not only special damages, as direct pecuniary loss, but injury to feelings, annoyance, etc., and, without proof of malice or reckless interruption of the service, plaintiff could not recover

punitive damages. But the actual damages might properly include just compensation for such annoyance and inconvenience as he had suffered.

3. DAMAGES—LOSS OF PROFITS—EVIDENCE.
　The testimony of the subscriber that his profits decreased, and about how much, and testimony what his profits were before, during and after the interruption of service, if supplemented by testimony that no other cause contributed to the decrease, was admissible; the question of damages for profits lost should have been left to the jury by the trial court, under proper instructions.

4. TELEGRAPHS AND TELEPHONES—BREACH OF CONTRACT.
　Under the terms of a contract for telephone service that provided the subscriber might, by paying an amount in addition to the regular rental, on or before the 20th of the second month, adjust his quarterly charge, the defendant was not entitled to remove his telephone before that date for nonpayment of the rent.

Error to Kent; McDonald, J. Submitted January 11, 1916. (Docket No. 96.) Decided March 30, 1916.

Case by Verde D. Harbaugh, doing business as the Electric Service Company, against the Citizens Telephone Company, a corporation, for the breach of a telephone contract. Judgment for defendant upon a verdict directed by the court. Plaintiff brings error. Reversed.

*Shelby R. Schurtz* (*H. Monroe Dunham* and *John M. Dunham*, of counsel), for appellant.
*Colin P. Campbell*, for appellee.

Plaintiff in this case declares against defendant "of a plea of trespass on the case." He charges in his declaration that the defendant is the owner and proprietor of a telephone exchange in the city of Grand Rapids; that on the 15th day of October, 1914, he entered into a contract with said defendant for one year's service of a business telephone at the rate of $36 per

year, to be paid in quarterly installments in advance. The rent was paid to January 1, 1915. The contract provides:

"The subscriber agrees that if he does not make said quarterly payment at the company's office on or before the twentieth (20th) day of first month of the quarter that he will pay an additional 75 cents as compensation for the additional cost of collecting and handling the account, and with the further understanding that if he does not pay said quarterly rental and the additional 75 cents on or before the twentieth (20th) day of the second month of the quarter, that said Citizens' Telephone Company may, without further notice, discontinue his service and remove the telephone and the apparatus covered by this contract."

It is further charged that on the 5th day of February the defendant company "wrongfully, maliciously, unjustly, carelessly, and negligently refused to connect said plaintiff's telephone with said defendant's exchange in the city of Grand Rapids, Mich., from Friday, February 5, 1915, up to Friday, February 12, 1915," at which time service was restored. Plaintiff avers that by reason of said unlawful act of the defendant he "suffered great inconvenience, annoyance, humiliation, and loss of business, and was totally unable to send or receive telephone messages from February 5, 1915, to February 12, 1915, and was utterly unable to transact his usual business" to his damage, $5,000. To this declaration the defendant interposed a plea of the general issue. Upon the trial the plaintiff gave testimony, showing the discontinuance of his service during the eight days mentioned in the declaration. The telephone in question was what is known as a "business telephone," plaintiff being engaged in electrical work. Several witnesses were sworn on behalf of the plaintiff, who testified that they had endeavored, but unsuccessfully, to secure communication with plaintiff by telephone, and that they were informed

that the telephone had been taken out. One customer gave evidence to the effect that, failing to communicate with plaintiff by telephone, he went to his place of business, where he personally gave the order which he had intended to give by telephone. On direct examination plaintiff was asked:

"*Q.* Have you learned of any contracts since February that you did not get by reason of not having a telephone?

"*A.* No, I don't know of any I did not get; I learned of some, but people come to me and told me about them and then I got them. I don't know a thing I did not get.

"*Q.* Have you learned from any one of orders being telephoned to your house—I am asking you from February 5 to February 12th—that you did not get and which went to somebody else, and that you had nothing to do with by reason of your phone not being in?

"*A.* No, sir."

Prior to the giving of the foregoing testimony, counsel for plaintiff had endeavored to show plaintiff's damages by inquiring what his profits were prior to February 5th, what they were between February 5th and February 12th while the service was discontinued, and what they were after February 12th. Under objection this line of inquiry was excluded by the court who said:

"You cannot show it [loss of profits] by showing he made so much the week before or so much the week later, or average up his business to show that he lost so much that week; that would not be the correct way to measure the loss of profits during that week. But if he knows that he lost a third of his business, for instance a third of his profits during that week, that must be based upon some orders of which he has knowledge. If he can show how he lost that third, I will allow you to do so."

Counsel for plaintiff then said:

"To be brief, I will state my position in this matter,

and that is this:  In the measure of damages as determining the loss of profits, it is my theory and contention that I have a right to go fully into his business prior to February 5th and his business to February 12th after that, and as to how it varies from February 5th to 12th, the loss of that service affected the profit at that time and subsequent to that, a general inquiry. I think the court ruled it out yesterday.  *  *  *  I will offer  *  *  *  to show inconvenience and annoyance to this plaintiff, and that during this period men who had telephoned to him orders previously came to his house because of the fact that his phone was out of order and all orders that he has since learned he did not get by reason of the phone cut out."

The court said:

"That includes some things that you would be allowed to prove if you could make proper proof of them. So far as they offer to show annoyance and inconvenience and humiliation, as you state in your declaration that offered, that proof will be excluded.  In order to make the record plain, I will state that if you can show what profits you lost during that week, I will take it.  That is the measure of damages.  What would be one of the measures of damages would be what you lost on the profits of your work during the time you didn't have any phone, but you must show that in a proper way.  It cannot be speculative.  You cannot speculate in regard to what he probably lost; but if you know what orders he lost and can show what his profits would have been, you may do so.  I want the record to state plainly that I did not exclude it."

Plaintiff then gave the testimony quoted above, showing that he knew of no orders which he did not get by reason of interruption of the service.  Under the ruling of the trial court, there was, of course, no evidence of loss of profits, nor of annoyance, inconvenience, or humiliation.  The court offered to direct a verdict in favor of the plaintiff for the amount of the rental covering the period of seven days, which offer the plaintiff declined, his counsel saying:

"That is not our theory, our claim at all. We do not claim to be able to recover for that."

The court thereupon directed a verdict for defendant, and plaintiff has removed the case to this court for review.

Brooke, J. (*after stating the facts*). Counsel for plaintiff state that:

"The only points in dispute in this case are: *First,* does this right of action sound in tort; and, *second,* what is the proper measure of damages?"

It is plaintiff's claim that the action, though based upon a breach of the contract, nevertheless is one sounding in tort. It is pointed out that the duty of the defendant to furnish telephone service to the plaintiff is fixed by statute (Act No. 206, Pub. Acts 1913 [2 Comp. Laws 1915, § 6691]), and that the contract between the parties simply measures the terms upon which such service is to be rendered.

Reference is made to the discussion of the question by Mr. Cooley in his work on Torts (3d Ed.), pp. 156, 159, where he says:

"Indeed in many cases an action as for a tort or an action as for a breach of contract may be brought by the same party on the same state of facts.  *  *  * There are also in certain relations duties imposed by law a failure to perform which is regarded as a tort, though the relations themselves may be formed by contract covering the same ground.  A case of the common carrier furnishes us with a conspicuous illustration.  The law requires him to carry with impartiality and safety for those who offer.  If he fails to do so, he is chargeable with a tort.  *  *  * So in cases of telegraph companies.  For negligence in sending a message, either contract or tort will lie."

In the case of *Church* v. *Anti-Kalsomine Co.,* 118 Mich. 219 (76 N. W. 383), plaintiff sued in tort for the fraudulent destruction of profits, which should

have accrued to plaintiff.   A demurrer to the declaration was overruled by this court.   We there said:

"While it is true the cause of action arose because of the contract relations between the parties, a considerable part of the case of the plaintiff rests upon matters outside of the contract, not a part of it, but connected with and dependent upon it, growing out of the duty which defendant owed to plaintiff" (citing cases).

Actions in tort under similar circumstances have been upheld in several jurisdictions.   *Rose* v. *Telephone Co.* (Sup.), 147 N. Y. Supp. 1021; *Southwestern Telegraph, etc., Co.* v. *Danaher*, 102 Ark. 547 (144 S. W. 925); *Glawson* v. *Telephone & Telegraph Co.*, 9 Ga. App. 450 (71 S. E. 747).   See, also, *Rich* v. *Railroad Co.*, 87 N. Y. 382.

In the case of *Carmichael* v. *Telephone & Telegraph Co.*, 157 N. C. 21 (72 S. E. 619, 39 L. R. A. [N. S.] 651, Am. & Eng. Ann. Cas. 1913B, 1117), plaintiff sued in tort for damages growing out of the wrongful interruption of telephone service from Saturday night until the following Monday morning.   In the lower court a judgment was directed for the plaintiff in the amount of $3, the sum wrongfully exacted from him as a condition precedent to the restoration of service. The appellate court reversed the judgment and ordered a new trial holding that:

" 'Actual,' in the sense of compensatory damages, is not restricted necessarily to the actual loss in time or money.   The claimant may be confined to this, if the jury so determine; but more than this is contained in the term, and more than this is covered by the issue."

And again:

" 'Compensatory damages include all other damages than punitive, thus embracing not only special damage as direct pecuniary loss, but injury to feelings, mental anguish,' etc., citing 18 Am. & Eng. Enc. Law (2d Ed.), 1082; Hale on Damages, pp. 99, 106."

In *Cumberland Telephone, etc., Co.* v. *Hendon,* 114 Ky. 501 (71 S. W. 435, 60 L. R. A. 849, 102 Am. St. Rep. 290), it was held that the measure of damages for wrongfully disconnecting a telephone because of mistake as to the payment of rent is the amount which will compensate the patron for the injuries caused by the breach of contract. In *Cumberland Telegraph, etc., Co.* v. *Hobart,* 89 Miss. 252 (42 South. 349, 119 Am. St. Rep. 702), it was held that such damages may include compensation for the pecuniary loss, and also for inconvenience and annoyance occasioned by being without the use of the telephone, since the damage sustained by the loss of a telephone in its very nature is largely composed of inconvenience and annoyance. See, also, cases cited in the note in 39 L. R. A. (N. S.) page 651. A further discussion of the matter will be found in the note in Am. & Eng. Ann. Cas. 1915A, 986.

A review of all the cases upon the subject leads us to the conclusion that in the absence of evidence that the defendant acted recklessly, negligently, or maliciously in interrupting the service, the plaintiff cannot recover punitive damages. His actual damages may, however, include a just compensation for such annoyance and inconvenience as he may be able to show he suffered by reason of defendant's unlawful act.

The testimony excluded by the court relative to the plaintiff's profits before, during and immediately after the interruption of service, we think, should have been admitted under proper safeguards. If plaintiff's testimony tended to show that his profits fell off during the period of interruption, it would be necessary for him to supplement such testimony by evidence that such diminution of profits was due to no other cause than failure of his telephone service. It is recognized that such testimony is, at best, unsatisfactory. We are, however, of opinion that plaintiff should not be

denied recovery for the wrongful act of defendant because of his inability to show his loss with absolute exactness and certainty.

Under the evidence and proper instructions from the court the question must finally be addressed to the common sense and good judgment of the jury.

The contention of defendant that plaintiff was in arrears at the time the phone was removed is not tenable. The contract itself provides that by paying 75 cents additional, the subscriber may pay his quarterly rental not later than the 20th of the second month (February in this case). The removal occurred on the 5th of February, and was therefore unwarranted according to the terms of the contract. The cases cited by counsel for defendant will be found digested in the notes hereinbefore referred to.

The judgment is reversed, and a new trial ordered.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.