TENNANT v STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

Docket No. 62906. Submitted April 10, 1984, at Grand Rapids.—
Decided June 4, 1985.

Lyle M. Tennant's right leg was amputated five inches below the knee as the result of a motorcycle accident. State Farm Mutual Automobile Insurance Company, Tennant's no-fault automobile insurer, paid Tennant personal protection insurance benefits for medical expenses and work loss but refused Tennant's request that State Farm pay the expenses for his attending a two-year course of study in electronics. The basis for State Farm's refusal to pay for the electronics course was that Tennant had been provided a prosthesis which would enable him to return to work and, therefore, he was not entitled to anything more as vocational rehabilitation. Tennant subsequently pursued the electronics course with the assistance of a $600 per term grant from the Department of Education's Bureau of Rehabilitation. He also filed suit against State Farm in Ogemaw Circuit Court alleging breach of contract, negligent breach of statutory duty to provide no-fault benefits, reckless or intentional breach of statutory duty to provide no-fault benefits, and reckless or intentional breach of statutory duty of good faith fair dealing by the insurer. The jury awarded plaintiff $12,000 for rehabilitation expenses and $15,000 for intentional infliction of emotional distress. Judgment was entered, Carl L.

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur 2d, Damages §§ 243, 245.
[2] 7A Am Jur 2d, Automobile Insurance §§ 327, 328.
  General release by tortfeasor by accident victim as affecting automobile insurer's obligation for personal injury protection (PIP) benefits. 39 ALR4th 378.
[3-5] 7A Am Jur 2d, Automobile Insurance § 360.
  Compensability, under automobile no-fault or personal protection insurance, of physical care services afforded injured insured by spouse or other person in close relationship. 28 ALR4th 700.
[6] 7A Am Jur 2d, Automobile Insurance § 345.
  Construction of provision in compromise and settlement agreement for payment of costs as part of settlement. 71 ALR3d 909.

Horn, J. Defendant appeals. Plaintiff cross-appeals from the denial of his request for attorney fees. *Held:*

1. Plaintiff failed to plead or prove a tort independent of the no-fault insurance contract and therefore is not entitled to damages for bad faith or mental anguish. The judgment as to damages for intentional infliction of emotional distress is reversed.

2. The trial court erred by not permitting defendant to set off $3,000 in rehabilitation benefits paid to plaintiff by the Department of Education's Bureau of Rehabilitation. The judgment of damages for breach of contract is modified to reflect a set-off of $3,000 for benefits paid by the state.

3. The trial court did not err by allowing plaintiff to claim normal rent, board, and living expenses as rehabilitation costs even though defendant had already paid wage loss benefits. The question of whether housing costs were allowable rehabilitation expenses was properly one for the jury.

4. The question of whether plaintiff was entitled to career advancement and elevation of job skills and earning power under a claim for rehabilitation benefits was properly before the jury. It cannot be said as a matter of law that the electronics course was not a reasonably necessary service for plaintiff's rehabilitation.

5. Defendant acted unreasonably in refusing to pay plaintiff's expenses in pursuing the electronics course. The trial court's ruling that defendant's actions were not unreasonable and that there was a legitimate question of statutory construction involved is reversed. Plaintiff is entitled to an award of attorney fees for services required to prove the breach of contract claim. The amount of the fees shall be determined and awarded on remand.

6. Plaintiff's contention that the trial court erred in refusing to give certain jury instructions relating to plaintiff's claim for mental anguish damages is moot since plaintiff's claim for such damages has been held invalid.

Affirmed in part, reversed in part and remanded for further proceedings.

1. CONTRACTS — BREACH OF CONTRACT — EXEMPLARY DAMAGES.

Exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract absent allegation and proof of tortious conduct existing independent of the breach.

2. INSURANCE — NO-FAULT INSURANCE — SETOFF OF BENEFITS.

Benefits provided or required to be provided under the laws of any state or the federal government may be deducted from personal protection insurance benefits otherwise payable for an injury incurred in a motor vehicle accident where they serve the same purpose as the personal protection benefits and are provided or are required to be provided as a result of the same accident (MCL 500.3109[1]; MSA 24.13109[1]).

3. INSURANCE — NO-FAULT INSURANCE — REHABILITATION — REASONABLY NECESSARY EXPENSES.

The question of whether expenses incurred are reasonably necessary for a person's rehabilitation within the meaning of the no-fault automobile insurance act is generally a question of fact for the jury (MCL 500.3107[a]; MSA 24.13107[a]).

4. INSURANCE — NO-FAULT INSURANCE — REHABILITATION — REASONABLY NECESSARY EXPENSES.

Expenses incurred for products, services or accommodations which are as necessary for an uninjured person as for an injured person are not allowable rehabilitation expenses under the no-fault automobile insurance act (MCL 500.3107[a]; MSA 24.13107[1]).

5. INSURANCE — NO-FAULT INSURANCE — REHABILITATION — HOUSING EXPENSES.

Housing expenses, which generally are not allowable rehabilitation expenses under the no-fault automobile insurance act, are ordinarily allowable where they are an extraordinary expense because incurred in an institutional setting (MCL 500.3107[a]; MSA 24.13107[a]).

6. INSURANCE — NO-FAULT INSURANCE — ATTORNEY FEES.

An insured's attorney is entitled to a reasonable fee for his or her services in a case in which personal protection insurance benefits are overdue; the fee shall be charged against the insurer if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment (MCL 500.3148[1]; MSA 24.13148[1]).

*Sperry & Dinse, P.C.* (by *Ralph H. Dinse*), for plaintiff.

*Coulter, Cunningham, Davison & Read* (by *George W. Beeby*), for defendant.

Before: R. M. Maher, P.J., and Wahls and J. A. Hathaway,* JJ.

Per Curiam. Defendant appeals as of right from an adverse jury verdict awarding plaintiff $12,000 for rehabilitation expenses, MCL 500.3107(a); MSA 24.13107(a), and $15,000 for intentional infliction of emotional distress. Plaintiff cross-appeals as of right from the denial of his request for attorney fees.

Plaintiff was severely injured in a collision with an automobile while he was riding his motorcycle on July 5, 1979. As a result, plaintiff's right leg was amputated about five inches below the knee.

At the time of the accident, plaintiff was living at home in Michigan and working 40 hours per week as assistant manager of a gas station. He was earning $3.15 per hour and paying ten percent of his wages to his mother for room and board. Plaintiff, who graduated from high school in June, 1978, was interested in automotive mechanics and obtained a job as a mechanic's assistant paying $4.00 per hour for ten hours daily, six days per week. He quit the mechanic job in July, 1978, because the hours were too long and the work too dirty, and started work at the gas station. Plaintiff had no specific plans for further schooling but was sizing up his employment alternatives while working at the gas station.

Following the accident and amputation, plaintiff was advised to seek employment where he could sit much of the time. Plaintiff applied to defendant insurer for personal protection insurance (PIP) benefits, including vocational rehabilitation. Defendant determined that plaintiff was eligible for benefits for medical expenses and work loss. Defendant began and continued to pay such benefits in a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

timely and proper fashion. Payment of rehabilitation expenses is the subject of this case.

On August 13, 1979, plaintiff's attorney sent medical bills to defendant with the request that defendant "have Mr. Tennant evaluated for rehabilitation under the Michigan No-Fault Act, Section 3107 and undertake an appropriate course of rehabilitation at [defendant's] expense". On September 5, 1979, defendant's claim specialist reported to his supervisor that, in response to plaintiff's request, he proposed to get together with the attorney and determine what type of rehabilitation was requested. If a four-year college program with tuition and all expenses paid was meant, the claim specialist thought that would be inappropriate since plaintiff was already receiving lost wages.

Plaintiff met with Larry Schultz, a counselor with the Department of Education, Bureau of Rehabilitation. Plaintiff was tested for his aptitude and a career in electronics was explored. Plaintiff considered the Ohio Institute of Technology in Columbus and the local Kirtland Community College. On September 13, 1979, plaintiff's attorney wrote to defendant stating that plaintiff was contemplating taking an examination for placement at OIT and that if placement was obtained costs would be about $10,000 for approximately two years of study and asking if defendant would pay for this proposed rehabilitation. Defendant's claim specialist's reaction was that plaintiff had been provided with a prosthesis which would enable him to return to his job as a gas station attendant and, with that, he would be rehabilitated.

On December 19, 1979, plaintiff's attorney notified defendant of a doctor's opinion that plaintiff, "in having a lower prosthesis, would probably have difficulty working long hours and being on his feet and walking a great deal. Training for

sedentary employment would be advised." Defendant was asked to take this into consideration with respect to plaintiff's rehabilitation request. Defendant responded on February 8, 1980:

"We do not feel that it was the intent of the Michigan Legislature when they devised the Michigan No-Fault Law to elevate an injured party's professional status or raise his economic position to [above?] what he was prior to an accident.

"Our obligation is to restore a person as closely as possible to his previous position. We feel that we have done that and we will continue to make lost wage payments * * *."

On the same day, plaintiff began the first of five trimesters at OIT. He was assisted with a $600 per term grant from the Bureau of Rehabilitation. On February 15, 1980, plaintiff's complaint was filed alleging that defendant had arbitrarily and unreasonably refused to consider or offer a program of rehabilitation.

On January 29, 1981, plaintiff filed a four count amended complaint. Count I, entitled breach of contract, adopted and incorporated the original complaint. Plaintiff additionally alleged: Count II, negligent breach of statutory duty to provide no-fault benefits; Count III, reckless or intentional breach of statutory duty to provide no-fault benefits; and Count IV, reckless or intentional breach of statutory duty of good faith fair dealing by insurer. The case went to the jury in December, 1981, on two theories: breach of contract and intentional infliction of emotional distress.

I

Defendant contends that plaintiff failed to plead or prove a tort independent of the no-fault insur-

ance contract and therefore is not entitled to bad faith or mental anguish damages. We agree.

In *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 420-421; 295 NW2d 50 (1980), *reh den* 409 Mich 1116 (1980), the Supreme Court held that, "absent allegation and proof of tortious conduct existing independent of the breach, see *e.g., Harbaugh v Citizens Telephone Co,* 190 Mich 421; 157 NW 32 (1916), exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract". Although *Kewin* dealt specifically with an insurance contract for income disability protection, this Court has uniformly applied its holding to no-fault contract cases. *Roberts v Auto-Owners Ins Co,* 135 Mich App 595; 354 NW2d 271 (1983), *lv gtd* 419 Mich 933 (1984); *Butt v DAIIE,* 129 Mich App 211; 341 NW2d 474 (1983), and cases cited therein; *Jerome v Michigan Mutual Auto Ins Co,* 100 Mich App 685; 300 NW2d 371 (1980).

In this case, we believe that plaintiff failed to plead and prove intentional infliction of emotional distress as an independent tort. Plaintiff's complaint alleges facts showing no more than a failure to properly investigate plaintiff's need for rehabilitation and to provide a rehabilitation program. At trial, plaintiff testified that he had no complaints about the way defendant handled his medical expenses and work loss, but he felt: "State Farm wasn't concerned about my rehabilitation at the time and they didn't take the time to tell me about it. Why did I have to learn it from my lawyers about it being paid?" Of course, since plaintiff had retained lawyers, defendant was obliged to deal directly with them and not with plaintiff. Accordingly, we conclude that plaintiff alleged no more than defendant's failure to discharge its contractual obligations. Therefore, it

was error for the court below to allow plaintiff's emotional distress claim to go to the jury over defendant's objections.

Plaintiff claims by way of cross-appeal, as well as in response to defendant's arguments, that *Harbaugh v Citizens Telephone Co,* 190 Mich 421, 428; 157 NW 32 (1916), is analogous and provides for a remedy for bad-faith breach because plaintiff's action arises out of the statutorily created no-fault situation. However, we believe that more than just a statutory duty must be shown. In *Harbaugh, supra,* p 428, in addition to finding a duty to provide phone service, the Court appears to have recognized that "the damage sustained by the loss of a telephone in its very nature is largely composed of inconvenience and annoyance". Thus, exemplary damages were allowed. In *Kewin,* although not discussed by the Court, there apparently were extensive statutory requirements underlying the disability insurance contract. See the uniform disability insurance policy provisions law, MCL 500.3400 *et seq.;* MSA 24.13400 *et seq.* Yet the *Kewin* Court refused to declare even the bad-faith breach of such a contract an independent and separately actionable tort and to thereby open the door to recovery for mental pain and suffering. *Kewin, supra,* p 423. Rather, the Court characterized the disability insurance contract as commercial in nature and an agreement to pay a sum of money upon the occurrence of a specified event. *Kewin,* p 416. The Court concluded that special damages could not be said to flow naturally from the breach and did not reasonably appear to have been contemplated by either party. *Kewin,* pp 418-419. We believe the instant case involving a no-fault insurance contract is analogous to *Kewin.* Therefore, the trial court's refusal to instruct the jury on bad-faith breach was correct.

## II

Defendant contends that the trial court erred by not permitting defendant to set off $3,000 rehabilitation benefits paid to plaintiff by the Department of Education's Bureau of Rehabilitation. We agree.

MCL 500.3109(1); MSA 24.13109(1) provides that benefits provided under the laws of a state government shall be subtracted from the PIP benefits otherwise payable. Plaintiff was provided benefits apparently under the Rehabilitation Act, MCL 395.81 *et seq.;* MSA 15.859(1) *et seq.* As amended by 1982 PA 315, § 4 of the act provides that the state board of education in certain situations has a right of subrogation or reimbursement to the extent of the cost of vocational rehabilitation services provided.

Plaintiff contends that this case is controlled by *Workman v DAIIE,* 404 Mich 477, 498-504; 274 NW2d 373 (1979). We disagree.

In *Workman,* no set-off was allowed where Medicaid benefits were "provided" to plaintiff, because plaintiff was not eligible for the benefits. Medicaid is a program for the medically indigent, but Deborah Workman was not a medically indigent individual as statutorily defined. However, in the instant case the Rehabilitation Act and the federal rehabilitation act, 29 USC 720 *et seq.,* are not premised on indigency. On the record before us, we conclude that plaintiff was statutorily eligible for the vocational rehabilitation benefits that he received from the state. The benefits being duplicative of no-fault benefits within the meaning of *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984), defendant was entitled to a set-off.

## III

Defendant contends that the trial court erred by

allowing plaintiff to claim normal rent, board and living expenses as rehabilitation costs notwithstanding that defendant had already paid wage loss benefits. Defendant relies on plaintiff's testimony at trial that he was using some of the wage loss benefits for housing expenses, *i.e.*, room, board and school. Defendant argues that to pay rehabilitation benefits for the same expenses would result in a double recovery. This argument has no merit. The purpose of the wage loss benefits was to replace lost income from work. The fact that plaintiff may have diverted some of these benefits to cover rehabilitation expenses does not render subsequent rehabilitation benefits a double recovery.

The question remains whether the housing costs were allowable rehabilitation expenses. MCL 500.3107(a); MSA 24.13107(a) provides that PIP benefits are payable for "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation". Defendant does not dispute that "rehabilitation" includes vocational rehabilitation. Whether expenses are reasonably necessary to a plaintiff's rehabilitation is generally a question of fact for the jury. *Nelson v DAIIE*, 137 Mich App 226, 231; 359 NW2d 536 (1984). However, expenses incurred for products, services or accommodations which are as necessary for an uninjured person as for an injured person are not "allowable expenses". *Manley v DAIIE*, 127 Mich App 444, 454; 339 NW2d 205 (1983). Nevertheless, where housing expenses are an extraordinary expense because incurred in an institutional setting, they will ordinarily be allowable. *Id.*

In this case, plaintiff testified that before the accident he lived at home and paid about $12 weekly for room and board. To participate in the

rehabilitation program at OIT, plaintiff had to live away from home and incurred substantially greater housing expenses in a setting analogous to institutionalization. He requested that the jury award him the difference between his actual expenses and the amount he would have paid his mother but for the accident. We believe that the determination whether these extraordinary expenses were reasonably necessary and thus "allowable expenses" was properly one for the jury.

## IV

Defendant argues that plaintiff was not entitled to career advancement and elevation of job skills and earning power under a claim for rehabilitation benefits. Defendant's position "has always been that [it] should pay for reasonable and necessary rehabilitation expenses pursuant to the insurance contract and the statute but should not be responsible for an extensive school program which significantly advances both job skills and earning capacity". In this case, plaintiff testified that the average starting salary of OIT graduates was about double his earnings as a gas station attendant.

Defendant does not argue for a per se rule but contends that in this case the facts are so clear and blatant that the trial court should have made a ruling taking the issue from the jury. Defendant notes that it did offer to pay for a portion of the direct, school-related costs of the program as an offer of compromise and as an indication of its efforts to assist in plaintiff's rehabilitation.

Our review of the record convinces us that the issue was properly before the jury. All three vocational experts who testified at trial, including Larry Schultz of the Bureau of Rehabilitation and

defendant's own expert, stated that the OIT program attended by plaintiff constituted reasonable rehabilitation due to plaintiff's need to secure sedentary employment. Defendant's own expert testified that it was not reasonable to expect plaintiff to return to work as a gas station attendant given his doctor's recommendation that he obtain sedentary employment. We cannot say as a matter of law that the OIT program was not a reasonably necessary service for plaintiff's rehabilitation.

V

Plaintiff contends that he is entitled to attorney fees pursuant to MCL 500.3148(1); MSA 24.13148(1), particularly in light of the jury's determination that defendant's actions constituted intentional infliction of emotional distress. The statute provides that the insured's attorney is entitled to a reasonable fee for his or her services in a case in which PIP benefits are overdue and the fee shall be charged against the insurer "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment". In this case, the trial court ruled that defendant's actions were not unreasonable and that there is a legitimate question of statutory construction involved. See *Butt, supra,* p 220. We reverse.

The parties have taken different positions as to the scope of "rehabilitation" as used in the no-fault act. The statute does not give a definition or other significant guidance as to the construction to be given the word. Plaintiff claims that he must be prepared for useful employment without regard to his prior position in the work force. Defendant contends that it only had to restore plaintiff to his former position.

We need not determine the proper statutory construction of "rehabilitation" because even taking defendant's more limited definition, it is clear that defendant acted unreasonably. Defendant's claim specialist believed that plaintiff was rehabilitated upon receiving his artifical leg. This belief appears to have been personal and not based on any expert advice. Indeed, it flew in the face of the opinons of plaintiff's doctor and Larry Schultz. At trial, the three experts, including defendant's own, were of the opinion that it was unreasonable to expect plaintiff to return to his employment at the gas station. Since, until after suit was commenced, defendant's position was exactly that plaintiff could return to the gas station, defendant has not shown that its refusal to pay rehabilitation benefits was reasonable.

While the scope of "rehabilitation" as used in the act may pose a legitimate question of statutory construction, we conclude that the question is irrelevant on the facts of this case. Defendant's offer of judgment, made after suit commenced, does not change the result. The offer was not a tender of what defendant believed was due under its own definition of "rehabilitation". Rather, it was, in defendant's own words, an "offer to compromise" the claim.

## VI

Plaintiff contends that the trial court erred in refusing to give certain jury instructions. Because the disputed instructions relate to plaintiff's claim for mental anguish damages, which we have held invalid, this issue is moot.

We remand to the trial court for further proceedings consistent with this opinion. The judgment of damages for breach of contract is modified

to reflect a set-off of $3,000 for benefits paid by the state. The judgment of damages for intentional infliction of emotional distress is reversed. Reasonable attorney fees for services required to prove the breach of contract claim shall be determined and awarded.