*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHERI LAU, Individually and as Guardian of JAY
LAU, PP,

UNPUBLISHED
July 29, 2021

Plaintiff-Appellant,

v

No. 354673
Wayne Circuit Court
LC No. 20-007157-NO

ACCIDENT FUND INSURANCE COMPANY OF
AMERICA,

Defendant-Appellee.

Before: TUKEL, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Plaintiff Sheri Lau, individually and as guardian of Jay Lau, a protected person, appeals the trial court's order granting summary disposition in favor of defendant Accident Fund Insurance Company of America. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In October 2002, Jay was injured in the course of his employment. Jay began receiving benefits under the Worker's Disability Compensation Act, MCL 418.101 *et seq*. (WDCA), and Sheri became his guardian and caretaker. In August 2016, the parties entered into a voluntary payment agreement, which was incorporated into an August 4, 2016 order that was entered by a magistrate with the Workers' Compensation Board of Magistrates. Part of the agreement required Jay to enter a detoxification program at Accident Fund's expense. Accident Fund believed that Jay was addicted to opioids and that the program would decrease Jay's need for continuing treatment, attendant care, and wage loss benefits. In October 2017, Accident Fund suspended the payment of Jay's benefits after he failed to attend a detoxification program at the Cleveland Clinic.

In November 2017, Sheri filed an application for a hearing on Jay's behalf, and the hearing commenced in August 2018. In November 2018, the magistrate issued an opinion and order, which required Accident Fund to resume paying benefits to Jay. The magistrate also ordered the parties to "cooperate" so that Jay could attend the program at the Cleveland Clinic at the earliest possible

-1-

date. In so ordering, the magistrate did "not find fault" with respect to the parties' failure to put the plan concerning Jay's attendance and participation in the detoxification program "into action" earlier.

In June 2020, Sheri filed an action in the trial court, asserting one count of "bad faith breaches of statutory duties" and one count of intentional infliction of emotional distress (IIED) against Accident Fund. Both claims were premised on allegations that Accident Fund had improperly and illegally suspended Jay's benefits. Accident Fund subsequently moved for summary disposition under MCR 2.116(C)(7) (collateral estoppel), MCR 2.116(C)(8) (failure to state a claim), and MCR 2.116(C)(10) (no genuine issue of material fact).[1] The trial court granted the motion, concluding that Sheri's claim of bad faith conduct was barred by collateral estoppel because the magistrate had determined that neither party was at fault. The trial court also concluded that the IIED claim was untenable under Michigan law.[2] This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision to grant or deny a motion for summary disposition[.]" *Galea v FCA US LLC*, 323 Mich App 360, 368; 917 NW2d 694 (2018). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Id*. (quotation marks and citation omitted). "However, a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*. (quotation marks and citation omitted).

"A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). The "trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160 (citations omitted).

A motion under MCR 2.116(C)(10) on the other hand tests the *factual sufficiency* of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

---

[1] Although Sheri argues that Accident Fund did not move for summary disposition under MCR 2.116(C)(10), this argument is without factual merit.

[2] The trial court also determined that a portion of the IIED claim was barred because it was filed several years after the statute of limitations had expired. Sheri does not challenge this ruling on appeal.

"[T]he application of legal doctrines, such as res judicata and collateral estoppel" are questions of law that are typically reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## III. ANALYSIS

### A. CLAIM FOR "BAD FAITH BREACHES OF STATUTORY DUTIES"

Sheri first argues the trial court erred when it granted summary disposition in Accident Fund's favor as to her "bad faith claim" on the basis of collateral estoppel. We agree.

Collateral estoppel requires a showing of the following three elements: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745 (2016) (quotation marks and citation omitted).

In this case, the trial court determined that Sheri's bad faith claim was precluded by collateral estoppel because the magistrate already had determined that none of the parties were at fault. The trial court relied on the following, which was contained in the magistrate's November 2018 opinion and order:

> The last issue and the one that appears to have given rise to the trial of this case is the need for [Jay] to attend and participate in a program of detoxification from his opioid medicines in conjunction with a rehabilitation program. All the physicians agreed that the type of program suggested at the Cleveland Clinic would be both appropriate and in [Jay's] . . . best interests. It would allow the potential for improvement in both his physical and mental state, reduce the need for or [the] amount of attendant care and perhaps even allow the return to some form of gainful employment[.]
>
> I do not find fault in the failure to put this into action, but a complete stoppage of benefits does run the risk of seeing [Jay's] condition and situation deteriorate further. The dispute over the scheduling of the treatment arose due to an intervening medical condition (Bell's Palsy), and a miscommunication between the parties resulting in the start of litigation and therefore the termination of the scheduled program at the Cleveland Clinic.

While the magistrate did "not find fault," we conclude that this statement was not made in relation to "a question of fact essential to the judgment[.]" See *Wass*, 315 Mich App at 398. Indeed, the magistrate acknowledged that his role was to determine whether (1) Jay had an injury or disease arising out of or in the course of employment, and (2) whether the injury or disease had placed a limitation on Jay's wage-earning capacity in work suitable to his qualifications and training. While the magistrate heard evidence relating to why Accident Fund ceased paying the benefits, the magistrate acknowledged that "[t]he primary issue in dispute [was] disability with related issues as to the appropriate care and treatment." The fact that the magistrate did not award sanctions under MCL 418.315(1) and MCL 418.801(2) does not change this conclusion because neither statutory provision required the magistrate to consider whether Accident Fund was at fault

or acted in "bad faith." The trial court therefore erred by granting summary disposition on the basis of collateral estoppel.

Nonetheless, summary disposition on the bad faith claim was proper because Sheri could not recover emotional distress damages in relation to that claim. "[E]xemplary damages are permissible in both legal and equitable actions where the plaintiff pleads malicious and wilful conduct." *McPeak v McPeak* (*On Remand*), 233 Mich App 483, 489; 593 NW2d 180 (1999). "The purpose of exemplary damages is to make the injured party whole," *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 630; 769 NW2d 911 (2009), as opposed to punish, *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 419; 295 NW2d 50 (1980). Indeed,

> [e]xemplary damages are a class of compensatory damages that allow for compensation for injury to feelings. In order to justify an award of exemplary damages, the act or conduct complained of must be voluntary and the act must inspire feelings of humiliation, outrage, and indignity. The act or conduct must also be malicious or so wilful and wanton as to demonstrate a reckless disregard of [the] plaintiff's rights. The theory is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done [to] the plaintiff's feelings. [*McPeak* (*On Remand*), 233 Mich App at 487-488 (citations omitted).]

The rationale underlying the general rule that exemplary damages are not recoverable in the context of a commercial contract is as follows:

> Just as with that denying damages for mental distress, the theory underlying the denial of exemplary damages in breach of contract cases is that the plaintiff is adequately compensated when damages are awarded by reference only to the terms of the contract. [*Kewin*, 409 Mich at 420.]

Therefore, "absent allegation and proof of tortious conduct existing independent of the breach, . . . exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract." *Id*. at 420-421. "[T]he conduct [that appellate courts] have found sufficient to justify the award of exemplary damages has occurred in the context of the intentional torts, slander, libel, deceit, seduction, and other intentional (but malicious) acts." *Veselenak v Smith*, 414 Mich 567, 575; 327 NW2d 261 (1982). See also *McPeak (On Remand)*, 233 Mich App at 488.

In Sheri's amended complaint, she alleged that Accident Fund engaged in certain bad faith conduct independent of the breach of the parties' voluntary payment agreement. Specifically, Sheri alleged that (1) Accident Fund violated certain provisions of the WDCA, (2) Accident Fund violated certain provisions of the Uniform Trade Practices Act (UTPA), MCL 500.2001 *et seq*., and (3) Accident Fund failed to comply with the magistrate's August 4, 2016 order, which required payment of benefits consistent with the parties' voluntary payment agreement. However, there is no indication that Accident Fund's alleged violations of the WDCA, the UTPA, and the magistrate's August 4, 2016 order could establish a claim in tort. Additionally, Sheri does not

provide a meaningful explanation or authority to support otherwise.[3]  Because Sheri failed to plead allegations to establish that Accident Fund committed an independent tort that was separate and distinct from the alleged breach of the voluntary payment plan, we conclude that summary disposition was proper with respect to Sheri's claim for exemplary damages.  Cf. *Phillips v Butterball Farms Co, Inc*, 448 Mich 239, 251; 531 NW2d 144 (1995) ("Because this action sounds in tort, the available damages are not limited by contract principles.") (quotation marks and citation omitted.)  Consequently, it is not necessary for this Court to consider whether the trial court erred by holding that Sheri was limited to the remedies set forth by the Legislature in the WDCA.[4]

Sheri also alleged that she was entitled to punitive damages with respect to Accident Fund's alleged violation of the WDCA and UTPA.  Accident Fund argued in its motion for summary disposition that Sheri's claim for punitive damages should be dismissed because those statutory schemes do not permit punitive damages.  However, the trial court did not reach this argument because it concluded that the doctrine of collateral estoppel applied.  Having concluded that the trial court erred in this respect, we decline to consider whether Sheri is entitled to punitive damages with respect to the statutory violation claims and remand to provide the trial court an initial opportunity to address those issues.[5]

## B.  IIED CLAIM

Sheri next argues that the trial court erred by granting summary disposition in Accident Fund's favor on the IIED claim.  We disagree.

---

[3] While Sheri appears to argue that *Harbaugh v Citizens Tel Co*, 190 Mich 421, 428; 157 NW 32 (1916), establishes that a defendant engaging in "unlawful acts" can support a claim for exemplary damages, this argument is without merit.  Indeed, the Court in *Harbaugh* concluded that a plaintiff must establish "that the defendant acted recklessly, negligently, or maliciously" in order to be entitled to exemplary damages.  *Id.*  The Court further noted that a plaintiff may be awarded actual damages, which are distinct from exemplary damages, if the plaintiff is able to show "annoyance and inconvenience" as a result of the "defendant's unlawful act."  *Id.* (noting that the plaintiff's "actual damages may . . . include a just compensation for . . . annoyance and inconvenience as he may be able to show he suffered by reason of [the] defendants' unlawful act").

[4] Sheri argues that the trial court improperly granted summary disposition on her claim for exemplary damages given that Accident Fund did not specifically move for summary disposition on this ground.  In so arguing, however, Sheri fails to provide any meaningful analysis or authority to support the argument, thereby abandoning it.  See *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).  Even so, we note that a trial court is permitted under MCR 2.116(I)(1) to "render judgment without delay" if it concludes that "a party is entitled to judgment as a matter of law[.]"  To the extent that Sheri argues that a due process violation occurred, this argument would be without merit.  See *Al-Maliki v LaGrant*, 286 Mich App 483, 485-486; 781 NW2d 853 (2009).

[5] In so holding, we express no opinion as to whether Sheri has private causes of action under the portions of the WDCA and UTPA that are cited in the amended complaint.

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted). "It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id*. However, if "reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Id*.

"The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). This test is a demanding one. Indeed, the necessary threshold for establishing that conduct is extreme and outrageous has been described as "formidable." *Atkinson v Farley*, 171 Mich App 784, 789; 431 NW2d 95 (1988).

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. [*Id*. (quotation marks and citation omitted).]

In this case, Sheri's IIED claim is based on allegations that (1) Accident Fund "denied all benefits" beginning in October 2017 in violation of the WDCA and the August 2016 order, (2) Accident Fund participated in the administrative proceeding in 2017 and 2018 despite knowing that it had no basis for denying benefits, and (3) Accident Fund denied benefits despite knowing that it was in control of Jay's primary source of income and that he was susceptible to emotional distress because of his traumatic brain injury.

The trial court concluded that it could not "find that [Accident Fund] committed an extreme and outrageous act by cutting off and continuing to withhold [Jay's] benefits." We conclude that this holding was not in error because it is well settled that an allegation that compensation benefits were wrongfully terminated is insufficient to sustain a claim for IIED. See *Lisecki v Taco Bell Restaurants, Inc*, 150 Mich App 749, 755; 389 NW2d 173 (1986) (holding that "an allegation by the plaintiff that compensation benefits were wrongfully terminated by the defendants in order to further some ulterior motive of the defendants rather than due to the plaintiff's return to his pre-injury wage-earning capacity" did not support that the defendants engaged in "outrageous or atrocious" conduct). See also *Hayley*, 262 Mich App at 277 ("The failure to pay a contractual obligation or insurance benefits does not amount to outrageous conduct, even if it is done in bad faith or wilfully."). Consequently, summary disposition on the IIED claim was proper.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Thomas C. Cameron