## NYGARD v NYGARD

Docket No. 87965. Submitted May 7, 1986, at Grand Rapids. Decided
  November 4, 1986.

Dudley N. Nygard married Michael A. Nygard with the knowl-
  edge that she was pregnant with the child of another man. Mr.
  Nygard persuaded her prior to the marriage not to move to
  Alaska and give the child up for adoption, as she had planned
  to do. He agreed to raise the child as his own and, when the
  child was born, Mr. Nygard acknowledged to hospital personnel
  that he was the father and was listed on the child's birth
  certificate as the father. Approximately sixteen months later
  Mrs. Nygard filed a complaint for divorce in Schoolcraft Circuit
  Court. A temporary order of child support was entered by the
  court. Mr. Nygard filed a motion to remove the minor child
  from the divorce complaint and to discontinue child support on
  the ground that he was not the biological father of the child.
  The court, William F. Hood, J., denied the motion and a
  judgment of divorce was entered including provisions that Mr.
  Nygard was to pay support and maintenance for the child in
  the amount of $99 per week. Mr. Nygard appealed.

The Court of Appeals *held:*

1. Under the facts of this case, defendant has an obligation to
contribute to the support of the minor child.

2. Plaintiff's requested relief may also be based on traditional
notions of estoppel.

3. The case is remanded to the trial court for reconsideration
of the amount defendant was ordered to pay for support and
maintenance.

Remanded.

REFERENCES

Am Jur 2d, Bastards § 69.

Supreme court's view as to the status and the rights of illegitimate
  children. 41 L Ed 2d 1228.

Liability of mother's husband, not the father of her illegitimate
  child, for its support. 90 ALR2d 583.

What law governs validity and enforceability of contract made for
  support of illegitimate child. 87 ALR2d 1306.

DIVORCE — CHILD SUPPORT — DUTY TO SUPPORT CHILD OF SPOUSE.
> A man who is not the biological father of a child may be required to provide support and maintenance for the child following a divorce where he persuades the mother, prior to the birth of the child, not to put the child up for adoption and to marry him and promises her that he will raise the child as his own and later holds himself out as the father of the child.

*Herbert & Wood* (by *John R. Wood*), for plaintiff.

*Thomas P. Casselman, P.C.* (by *Thomas P. Casselman*), for defendant.

*Peter J. Hollenbeck,* for Shuntelle Lee Nygard, a minor child.

Before: T. M. BURNS, P.J., and J. H. GILLIS and M. J. KELLY, JJ.

T. M. BURNS, P.J. Defendant Dudley Neil Nygard appeals as of right from the provisions of a divorce judgment requiring defendant to contribute to the support and maintenance of Shuntelle Lee Nygard, a minor child.

Plaintiff Michael Ann Nygard met the defendant, Dudley Nygard, in July of 1982, and began to spend a good deal of time with him thereafter. By October of 1982, a strong relationship had developed between the two. In October of 1982, plaintiff discovered that she was pregnant. It is undisputed that the pregnancy was not a result of plaintiff's relationship with defendant. Rather, plaintiff's pregnancy resulted from a short relationship with a man named "Tim" whom she had met in May of 1982 during a stay in Florida. Plaintiff was shocked and upset when she discovered that she was pregnant and did not know how she would support a child.

In late October or early November of 1982, plaintiff advised defendant that she was pregnant

and that the child was not his. She told him that she planned to go to Alaska, where her brother lived, and give the baby up for adoption. Defendant asked plaintiff not to go to Alaska and stated that he did not want to lose her. Defendant wanted to marry plaintiff and thought that the mother and baby would be a "package deal." Defendant agreed to raise the child as his own. When he agreed to treat the baby as his own, he meant that he would buy her things, feed her, and house her.

Plaintiff decided not to go to Alaska and give the child up for adoption. She stressed that one of the main reasons she did not do so was because of defendant's statements.

On December 4, 1982, the parties were married. Defendant indicated that they married before the child was born so that the child would have defendant's name and so that no one would know that he had not fathered the child.

Shuntelle was born on February 14, 1983. Defendant was present in the delivery room during birth. He acknowledged to hospital personnel that he was the child's father and his name was placed on the birth certificate. Defendant treated Shuntelle as his own child during the marriage and encouraged her to call him "Papa."

The couple separated in May of 1984. On June 6, 1984, plaintiff filed a complaint for divorce against defendant in Schoolcraft Circuit Court. On June 22, 1984, a temporary order of child support was entered by the circuit court. On October 11, 1984, defendant filed a motion to "remove the minor child from the divorce complaint and to discontinue child support" on the ground that he was not the biological father of the minor child. The circuit court denied defendant's motion. Defendant thereafter filed for leave to appeal, which this

Court denied. On September 26, 1985, a judgment of divorce was entered. The judgment included provisions requiring defendant to contribute to the support and maintenance of the minor child. Because defendant was sick at the time, the judgment indicated that once defendant returned to work on a full-time basis, he was to pay support and maintenance of $99 per week. Defendant now appeals as of right. We believe that the trial court properly concluded that defendant could be held responsible for child support payments.

Defendant argues that the trial court erred in finding defendant estopped to deny parentage of the child and estopped to deny his obligation to support the child. We find that, under the facts of this case, defendant has an obligation to contribute to the support of this child.

It is generally recognized that the biological parents are obligated by law to maintain and support their children. The duty to support arises both from common law and from statutory law. *West v West,* 241 Mich 679, 684; 217 NW 924 (1928); MCL 722.3; MSA 25.244(3) and MCL 722.1(b); MSA 25.244(1)(b). See also MCL 722.711 *et seq.;* MSA 25.491 *et seq.*

In this case, there is no biological relationship from which a support obligation can arise. In most cases in which there is no biological relationship between the child and the adult, the adult is not required to support the child. See, e.g., *Magarell v Magarell,* 327 Mich 372, 376; 41 NW2d 898 (1950). However, there are exceptional situations in which an adult who is not a biological parent of a child may be required to make payments to be used to support the child.

One such exceptional situation was refereed to by this Court in *Johnson v Johnson,* 93 Mich App 415; 286 NW2d 886 (1979). In that case, the plain-

tiff was a man who married the defendant knowing that she was carrying a child for whom he was only possibly the biological father. Plaintiff thereafter held himself out as the father and supporter of the child for several years. In *Johnson,* this Court stated:

> Even if plaintiff were not the biological father of the child, by marrying defendant he forecloses any action by her to seek support from the child's biological father. Actions under the paternity act are authorized only where the woman was unmarried from the conception to the date of birth of the child. MCL 722.711(a) and (b), 722.714(b); MSA 25.491(a) and (b), MSA 25.494(b). As the Ohio court observed in *Burse v Burse,* 48 Ohio App 2d 244, 248; 356 NE2d 755 (1976), "the man at the time he marries the woman, knowing the woman is pregnant by another man, should be cognizant that he is foreclosing the chance of the unborn child being legitimized by its natural father and is barring a bastardy action by the mother against the natural father."
>
> Plaintiff assumed the status of father of this child when the child was born and continued as such for ten years until he amended his divorce complaint at trial. As the child was born during the marriage while the parties lived together as husband and wife, it was not necessary for plaintiff to go through adoption proceedings. Conversely, after plaintiff has represented himself as the father of this child for nine to ten years, he may not now say that he was not.
>
> On the facts of this case the Court is compelled to hold that plaintiff is estopped by his conduct to deny paternity of this child. [93 Mich App 419-420.]

While the situation which was present in *Johnson* is somewhat different from the situation here, the policies and rationale of *Johnson* are sound

and applicable in this case.[1] We agree with *Johnson* that under certain circumstances a person other than a biological parent may be held responsible for child support. Such a concept is not novel or extraordinary. In this case, we find it equitable to hold defendant responsible for child support payments.

In addition, we believe that traditional notions of estoppel may provide a basis for plaintiff's requested relief. The facts of this case suggest either that plaintiff and defendant entered into an enforceable contract whereby defendant agreed to support the child, or, if the statute of frauds prevents the contract from being enforceable, that defendant may be held responsible under the doctrine of "equitable estoppel" or "promissory estoppel."[2]

In *Pursell v Wolverine-Pentronix, Inc,* 44 Mich App 416, 418-419; 205 NW2d 504 (1973), this Court indicated, referring to 3 Williston, Contracts (3d

[1] We note that *Johnson* is not directly on point in this case for several reasons.

First, the *Johnson* Court alternatively held that the trial court's finding of nonpaternity in that case was clearly erroneous.

Second, the paternity act no longer precludes an action by the mother seeking support from the biological father in cases such as this.

Third, an "estoppel to deny paternity" is of no avail to plaintiff or the child in this case since plaintiff has not asserted that defendant is the child's biological father. Rather, the parties agree that defendant is not the father. Since paternity has not been alleged, there is nothing for defendant to deny in that regard or for defendant to be estopped from denying.

On the other hand, the equities of this case are similar to those in *Johnson.* Defendant married plaintiff knowing that she was pregnant by another man. By doing so, defendant should have been cognizant of the fact that he reduced the chances that either the natural father or mother of the child would begin a proceeding whereby the natural father's paternity could be established. Defendant also promised to support the child and represented himself as the father of the child for some length of time. Moreover, plaintiff decided not to give the child up for adoption in reliance on defendant's promise.

[2] For the applicable statute of frauds provision, see MCL 566.132(c); MSA 26.922(c).

ed), § 533A, P 796, regarding the doctrine of equitable estoppel, that where "one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the Statute of Frauds." This Court also indicated that the doctrine of equitable estoppel applies in those cases where its application is called for by the facts. 44 Mich App 420.

The elements of equitable or promissory estoppel are: (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *In re Timko Estate,* 51 Mich App 662, 666; 215 NW2d 750 (1974); *McMath v Ford Motor Co,* 77 Mich App 721, 725; 259 NW2d 140 (1977); *Schipani v Ford Motor Co,* 102 Mich App 606, 612-613; 302 NW2d 307 (1981). See also *Opdyke Investment Co v Norris Grain Co,* 413 Mich 354, 369-370; 320 NW2d 836 (1982). Each of these elements is clearly present in this case. The circumstances of this case are such that the promise must be enforced if injustice is to be avoided. Because of defendant's promise an obligation arose both to plaintiff and to the child. We believe that this promise can be enforced by the circuit court in this divorce proceeding.[3]

However, our de novo review leads us to the conclusion that payments of $99 per week may be

[3] We believe that the statute allowing the trial court to enter an order concerning the support of minor "children of the parties" does not prevent a nonbiological "parent" like the one in this case, who knowingly enters into the arrangement and is standing in loco parentis to a child of the marital household, from being held responsible for paymnents to be made for the support of the child. See MCL 552.16; MSA 25.96.

inappropriate under the circumstances of this case. We remand to the circuit court for reconsideration of this amount. The circuit court may consider the fact that defendant is not the natural father of the child and may reduce defendant's required payments if the circumstances so indicate.

Remanded. We do not retain jurisdiction. No costs.