LaMOTHE v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 171729. Submitted July 12, 1995, at Lansing. Decided
December 15, 1995, at 9:25 A.M. Leave to appeal sought.

George LaMothe brought an action in the Ingham Circuit Court
against his no-fault automobile insurer, Auto Club Insurance
Association, after the defendant refused to pay a portion of the
plaintiff's health care expenses resulting from an automobile
accident that the defendant determined to be unreasonable
expenses. However the defendant agreed to defend and indem-
nify the plaintiff in the event the medical providers filed suit
against the plaintiff for the unpaid balance of their bills. The
court, Peter D. Houk, J., granted summary disposition for the
defendant. The plaintiff appealed.

The Court of Appeals *held:*

1. The plaintiff's claim failed to state an actionable claim for
breach of contract.

2. The plaintiff failed to state a cause of action, even if a
breach of contract could be established, because he has suffered
no damages as a matter of law. Because the plaintiff failed to
plead and prove tortious conduct independent of the breach of
contract claim, damages for emotional distress and anxiety are
not recoverable. Furthermore, the plaintiff cannot recover his
actual attorney fees because he has failed to state a cause of
action for breach of contract.

3. The defendant's promises to defend and indemnify the
plaintiff in the event he is sued by the health care providers for
their outstanding balances are enforceable.

4. The trial court properly determined that the plaintiff's
allegations of fraud were not specifically pleaded and, thus,
were insufficient to state a claim. Dismissal of the claims of
fraud was appropriate.

Affirmed.

McDonald, J., concurring in part and dissenting in part,

REFERENCES

Am Jur 2d, Automobile Insurance § 359; Estoppel and Waiver §§ 48,
71; Fright § 33.
See ALR Index under Automobile Insurance; Emotional Injury;
Estoppel and Waiver.

stated that the majority was correct in holding that the allegations of fraud were insufficient to state a claim, but disagreed that summary disposition was proper. The plaintiff's complaint clearly sets forth a claim of breach of contract. The plaintiff raised a question of fact regarding the material issue whether the defendant paid all reasonable and necessary medical expenses submitted by the plaintiff for payment. The trial court should not have granted the motion for summary disposition. The evidence indicates that the plaintiff has been exposed to harassment, collection attempts, and disparagement of credit, and has incurred liability as a result of the dispute between the health care providers and the defendant. The promises made by the defendant to defend and indemnify the plaintiff from the medical providers' suits are unenforceable. To deny the plaintiff access to the courts on the basis of such promises is a denial of due process and impairment of the plaintiff's contractual rights. The order granting summary disposition should be reversed and the matter should be remanded for a trial regarding the issue of reasonable charges and necessary services.

1. INSURANCE —NO-FAULT — REASONABLE EXPENSES.

An insurer does not breach its contract of no-fault automobile insurance where it pays a reasonable fee for reasonably necessary products, services, and accommodations provided to an insured for an accidental bodily injury covered by personal protection insurance; the fact that the amount paid is less than the amount charged by the health care provider does not constitute a breach of contract where the amount paid is necessary and reasonable and the insurer agrees to defend and indemnify the insured in the event the health care provider sues the insured for the balance (MCL 500.3107[1][a], 500.3157; MSA 24.13107[1][a], 24.13157).

2. CONTRACTS — ACTIONS — DAMAGES.

Damages for emotional distress and anxiety are not recoverable in an action for breach of contract where the plaintiff does not allege and prove tortious conduct existing independently of the breach of contract.

3. ESTOPPEL — INSURANCE — NO-FAULT — PROMISES TO DEFEND AND INDEMNIFY.

Either judicial estoppel or promissory estoppel may be invoked to preclude a no-fault automobile insurer from successfully declining to defend and indemnify an insured in the event the insured is sued by health care providers for the amount of services, products, or accommodations provided to the insured after an automobile accident but not paid by the insurer on the

basis of the insurer's determination that the amount billed was either unnecessary or unreasonable and the insurer has informed the court that it would provide such defense and indemnity and the court relied on that information in granting the relief sought by the insurer.

*Fowler, Tuttle, Clark & Coleman* (by *Larry D. Fowler*), for the plaintiff.

*Willingham & Coté, P.C.* (by *Steven A. Mitchell* and *Marianne E. Samper*), for the defendant.

Before: TAYLOR, P.J., and McDONALD and J. G. COLLINS,* JJ.

TAYLOR, P.J. Plaintiff appeals as of right the trial court's order granting summary disposition for defendant. We affirm.

Plaintiff was injured in an automobile accident. Defendant was plaintiff's automobile no-fault insurer and, pursuant to the insurance policy, was responsible for the payment of "reasonable charges incurred" for plaintiff's medical services.[1] Defendant paid its portion of plaintiff's expenses until 1992, when it instituted a company-wide system of medical bill audits to determine what constituted a reasonable charge for a medical service. Through the audit process, defendant determined that some of plaintiff's expenses were not reasonable, and, therefore, refused to pay that portion of the health care expenses it determined to be unreasonable, including payments for home care services to Diane LaMothe, plaintiff's daughter.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] This contractual provision is in harmony with the requirement in the automobile no-fault insurance statute that requires insurers to pay for all reasonable and necessary medical expenses. MCL 500.3107; MSA 24.13107.

Plaintiff filed suit, claiming that defendant's failure to pay all medical bills in full constituted a breach of the insurance contract and fraudulent conduct. In particular, plaintiff asserts that the audits were motivated by a fraudulent intent to establish a "test case for AAA for the purpose of diminishing benefits to the plaintiff."

The trial court granted summary disposition pursuant to MCR 2.116(C)(10), holding that plaintiff did not provide adequate proof of damages to create a genuine issue of material fact for trial. In the alternative, the trial court found that plaintiff did not state a claim for breach of contract and granted summary disposition pursuant to MCR 2.116(C)(8). The court further found that the allegations of fraud were mere speculation unsupported by specific facts as required by MCR 2.116(G)(4).

By way of overview, after the circuit court issued its opinion in this case, this Court addressed in a different case most of the issues raised by plaintiff and disposed of them utilizing reasoning similar to that employed by the circuit court. See *McGill v Automobile Ass'n of Michigan,* 207 Mich App 402; 526 NW2d 12 (1994). In *McGill,* a case with facts similar to this case, several persons injured in automobile accidents sued their insurers for the insurers' failure to pay the plaintiffs' medical expenses in full. Rather than pay the amount billed in full, the insurers, in reliance on the policy language, the automobile no-fault insurance statute, and an interpretive statement of the Commissioner of Insurance, paid only the charges they determined were necessary and reasonable. *Id.* at 404. As a protection to the insureds, the insurers agreed to defend and indemnify their insureds in the event that the medical providers filed suit

against the insureds. The insurers also promised to attempt to protect the insureds' credit ratings from the adverse effect of the nonpayment of the providers' bills. On the basis of these facts, the *McGill* Court concluded that the insureds had suffered no damages resulting from the insurers' partial payment of medical bills. *Id.* at 407. The same situation pertains here and *McGill* is dispositive.

While acknowledging the applicability of *McGill,* plaintiff argues *McGill* was wrongly decided and that the trial court in this case erred in granting defendant's motion for summary disposition and dismissing his suit. We disagree with plaintiff and will supplement in this opinion those matters that were earlier discussed in *McGill.*

In this case, the trial court held, and we concur, that plaintiff's complaint failed to state an actionable claim for breach of contract. MCR 2.116(C)(8). There has been no breach of the contract. Plaintiff alleged that "defendant, AAA, has failed, refused and neglected to pay health care benefits as provided in MCL 500.3109a; MSA 24.13109(1)."[2] This statement is simply incorrect. Defendant has not refused to pay health care benefits due plaintiff. To the contrary, defendant has paid and continues to pay those charges reasonably incurred for reasonably necessary products, services, and accommodations for plaintiff's care. The mere fact that those amounts are not the same as the amounts charged by the health care provider does not, as plaintiff would have it, constitute a breach of the contract. Indeed, contrary to plaintiff's contention, if the insurance company paid the bills regardless of

[2] We believe plaintiff mistakenly cited § 3109a in his brief. Section 3109a concerns deductibles and exclusions, not personal protection insurance benefits. We assume plaintiff intended to cite § 3107(1)(a), MCL 500.3107(1)(a); MSA 24.13107(1)(a).

their reasonability, that action would, in fact, be in violation of the insurance contract.[3]

Plaintiff also has failed to state a cause of action because even if a contract breach could be established, he has suffered no damages as a matter of law. Plaintiff's complaint claims that as a result of defendant's alleged breach of contract, he has suffered outstanding bills, a blemished credit rating, emotional stress and anxiety, and attorney fees. Plaintiff concedes that the only damage he has suffered as a result of the outstanding bills and blemished credit rating is the threat of receiving annoying or harassing telephone calls from creditors. Plaintiff's attorney stated at the summary disposition hearing, "I think spoiled dinner certainly is the right analysis" for damages that plaintiff suffered as a result of the outstanding bills and blemished credit rating. However, applying the doctrines springing from the venerable *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145 (1854), these are not cognizable damages in a contract action. Damages for emotional distress and anxiety, as well as damages for annoying telephone calls during dinner, are not recoverable in a breach of contract action absent allegations and proof of tortious conduct existing independently of the breach of contract. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419-

---

[3] Further, this scrutiny by the insurance company would be compelled even if the contract itself did not provide for it because the statute controlling these contracts for automobile insurance requires it. Under the Michigan automobile no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.,* insurers are responsible for "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a); MSA 24.13107(1)(a). Furthermore, in the same statute, the Legislature has decreed that a health care provider cannot lawfully charge more than a reasonable amount for those products, services, and accommodations. MCL 500.3157; MSA 24.13157. Thus, not only should an insurer audit and challenge the reasonableness of bills submitted by health care providers, but the providers should expect no less.

421; 295 NW2d 50 (1980); *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 17; 527 NW2d 13 (1994); *Taylor v Blue Cross & Blue Shield of Michigan*, 205 Mich App 644, 657; 517 NW2d 864 (1994); *Tennant v State Farm Mutual Automobile Ins Co*, 143 Mich App 419, 425; 372 NW2d 582 (1985). Accordingly, because plaintiff in this case has failed to plead and prove tortious conduct independent of the breach of contract claim, damages for emotional distress and anxiety are not recoverable. Furthermore, plaintiff cannot recover his actual attorney fees because he has failed to state a cause of action for breach of contract.

Notwithstanding the fact that refusing to pay unreasonable medical expenses is allowed under the insurance contract, in an effort to hold the insured harmless should the health care provider sue the insured, the insurer has agreed to fully defend and indemnify the insured from liability for necessary services priced in excess of what the insurer considers to be reasonable and customary.[4]

[4] In this case, defendant sent plaintiff's attorney a letter that stated in pertinent part:

> To the extent that your client's claim for damages in the above stated case relates to any alleged balances for any medical bills for which some payment has been made, it is the position of ACIA that it has paid to those medical providers all that they are entitled to receive under the Michigan no fault act. Any alleged balances in the medical bills are not George LaMothe's responsibility and he does not have any personal liability for them. If any of the medical providers bring a claim against George LaMothe, ACIA will defend and indemnify him. In fact, ACIA will waive any technical defects and allow the provider to sue the ACIA directly so that George LaMothe won't even have to be a party to the litigation.

This is similar to *McGill* where the insurers "stated expressly that they will defend and indemnify [the] plaintiffs in the event that [the] plaintiffs are sued by their providers for the outstanding balance." *Id.*, at 406. Furthermore, the defendants in both cases represented to the trial court and this Court that they would defend and indemnify the plaintiffs.

This removes the insured from jeopardy, · yet the dissent here contends that in both *McGill* and in this case the insurers' promises to defend and indemnify the plaintiffs are not enforceable and, echoing the claim of plaintiff, are "nothing more than unenforceable promises to do the right thing." *Post* at 590. We respectfully believe this position is incorrect and is premised upon faulty legal analysis.

Defendant's promise to defend and indemnify plaintiff must be analyzed in terms of judicial and promissory estoppel.

With regard to judicial estoppel, like the insurers in *McGill,* the insurer in this case made representations to the courts that it would defend and indemnify plaintiff. Because these representations were relied upon by courts to grant the relief sought by the insurer, the doctrine of judicial estoppel would be invoked to preclude the insurer from successfully declining to defend and indemnify. *Paschke v Retool Ind,* 445 Mich 502, 509; 519 NW2d 441 (1994).

Regarding promissory estoppel, assuming the matter was not disposed of by utilization of judicial estoppel, a test of the enforceability of the promise would inevitably arise in a circumstance in which a health care services provider filed suit against an insured for outstanding medical bills and the insurer refused to defend and indemnify the insured. Surely, the insured would invoke promissory estoppel and the court would undoubtedly acknowledge the efficacy of the doctrine to preclude the insurer from denying coverage. See · *Huhtala v Travelers Ins Co,* 401 Mich 118; 257 NW2d 640 (1977); *Nygard v Nygard,* 156 Mich App 94, 99-100; 401 NW2d 323 (1986).

In short, regardless of the likelihood for success, what is clear is that once a health care services

provider sues an insured for any outstanding balance, the insurer would be estopped to renege on its promise to defend and indemnify the insured, which is simply to say that the promise is enforceable.[5]

Moreover, the probability of a health care services provider suing an insured for an amount in excess of what is reasonable seems remote. The reason is that such a suit, freighted with the burden of seeking the unreasonable, would in all probability be unsuccessful. As our Supreme Court said in dicta concerning this situation:

> We question, in any event, the Court of Appeals apparent conclusion that if the insurer is not made liable for even unreasonable and unnecessary expenses it will inevitably fall to plaintiff to pay those expenses. To the extent that plaintiff has any liability for these expenses in the event his insurance does not pay, it is presumably contractual. It seems unlikely that plaintiff would have an express agreement with [the doctor] or the hospital to pay unreasonable and unnecessary medical expenses, and equally as unlikely that he would have an implied contractual duty to do so. See 61 Am Jur 2d, Physicians, Surgeons, and Other Healers, § 158, pp 290-291. And, while we need not resolve the issue in this case, it seems unlikely that medical expenses found to be unreasonable or unnecessary in a no-fault action would be found recoverable in a contract action against plaintiff. [*Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55-56, n 10; 457 NW2d 637 (1990).]

Further, in the circumstance where the health

---

[5] This promise is enforceable regardless of the period of limitation in the policy that controls presentment of claims to the insurer. Thus, the fact that that period is shorter than the period the provider has to sue the insured is irrelevant to the enforcement of the insurer's promise, supplemental to the policy, to defend and indemnify whenever the provider might sue the insured.

care services provider felt that the reasonability determination of the insurer was flawed, it is also unlikely that the provider would be so impolitic as to sue the insured rather than the insurer for the difference. Again, the reason is the very practical one of the provider placing itself on the wrong side of a David and Goliath match-up. Thus, we can anticipate that health care services providers, as practical litigants, would bypass the insured and directly sue, pursuant to third-party beneficiary theories, the entity with prospects identical to their own for engendering jury sympathy—the insurer.

With regard to the allegations of fraud, we conclude that the trial court properly determined that they were not specifically pleaded, and, thus, were insufficient to state a claim. General allegations will not suffice to state a fraud claim. *Van Marter v American Fidelity Fire Ins Co,* 114 Mich App 171, 184; 318 NW2d 679 (1982). Further, as noted in MCR 2.116(G)(4), and *Easley v Univ of Michigan,* 178 Mich App 723, 726; 444 NW2d 820 (1989), mere speculations are not sufficient to overcome a motion for summary disposition. As a result, plaintiff's claims of fraud were appropriately dismissed pursuant to MCR 2.116(C)(8) and (10).

Affirmed.

J. G. COLLINS, J., concurred.

McDONALD, J. *(concurring in part and dissenting in part).* I agree with the majority's holding that plaintiff's allegations of fraud were insufficient to state a claim. However, I strongly disagree with the majority's decision to affirm the dismissal of plaintiff's complaint by way of summary disposition pursuant to MCR 2.116(C)(8) and (10).

Summary disposition is reviewed de novo because this Court must review the record to determine whether the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83; 520 NW2d 633 (1994).

MCR 2.116(C)(8) permits summary disposition when the opposing party has failed to state a claim upon which relief can be granted. A motion under this subrule determines whether the opposing party's pleadings allege a prima facie case. The court must accept as true all well-pleaded facts. Only if the allegations fail to state a legal claim is summary disposition valid. *Stehlik, supra.*

Plaintiff's complaint alleges the existence of a contract of automobile insurance between the parties pursuant to MCL 500.3101; MSA 24.13101, which entitled plaintiff to personal protection insurance benefits. Plaintiff further alleges he was injured in an automobile accident and properly applied for benefits. Defendant's answer admits these allegations. Plaintiff further alleges defendant has failed, refused, and neglected to pay health care expenses due him under the policy, causing him damages such as impairment of his credit rating, emotional stress and anxiety, and attorney fees. Defendant's answer denied these allegations or left plaintiff to his proofs.

Accepting all well-pleaded facts as true, plaintiff's complaint clearly sets forth a breach of contract claim. Nonperformance of an obligation due is a breach of contract even though the liability of the nonperforming party is limited or nonexistent. *Woody v Tamer*, 158 Mich App 764; 405 NW2d 213 (1987). The grant of summary disposition under MCR 2.116(C)(8) was clearly erroneous and contrary to law.

A motion pursuant to MCR 2.116(C)(10) tests the

factual basis underlying a plaintiff's claim. MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to damages as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. *Stehlik, supra.* Generally, summary disposition is premature if discovery concerning a disputed issue is incomplete. *Adams v Perry Furniture Co (On Remand),* 198 Mich App 1; 497 NW2d 514 (1993); *Ransburg v Wayne Co,* 170 Mich App 358; 427 NW2d 906 (1988).

As previously discussed, the pleadings raise a question of fact regarding whether defendant paid all reasonable and necessary expenses that were submitted by plaintiff for payment. Further, review of the transcript of the hearing regarding the motion for summary disposition indicates plaintiff furnished defendant with documentation showing a blemished credit rating. Although defendant filed an affidavit of the medical director of its auditing firm in support of its motion indicating the method used in determining a reasonable and necessary charge for medical services, plaintiff claimed defendant's expert, during his deposition, refused to give an opinion regarding which of plaintiff's medical bills were reasonable or unreasonable. Plaintiff's counsel also advised the court he did not have sufficient time to have the expert's deposition transcribed for use at the hearing, to support his position with counter affidavits and deposition testimony, reminding the court, pursuant to its order, he had approximately six additional weeks to complete discovery.

Clearly, the question whether the bills for medical services provided to plaintiff were reasonable charges and whether some of the services were necessary is a factual dispute of a material issue. "The reasonableness and necessity of the particular expenses incurred by plaintiff are relevant to the question of defendant's 'liability' under [MCL 500.3107; MSA 24.13107] *Nasser v Auto Club Ins Ass'n,* 435 Mich 33, 63; 457 NW2d 637 (1990)." The question whether expenses are reasonable and reasonably necessary is generally one of fact for the jury. *Id.* If an insurer refuses to make prompt payments of no-fault benefits, it runs the risk of sanctions under § 3142 of the act, but § 3107 guarantees that, where an insurer opts to run that risk, it is entitled to a jury trial regarding both liability and damages to the extent questions of fact are found to exist. *Nasser, supra.*

In summary, after reviewing the pleadings, affidavits, depositions, admissions, and the whole record, in a light most favorable to plaintiff because there was a genuine issue of material fact and discovery had not been completed, I believe the trial court clearly erred and acted contrary to law in granting defendant's motion for summary disposition under MCR 2.116(C)(10).

The majority's reliance on *McGill v Automobile Ass'n of Michigan,* 207 Mich App 402; 526 NW2d 12 (1994), is misplaced. In *McGill,* the record reveals no evidence the plaintiffs therein suffered injury as a result of the defendant's partial payment of their medical bills. In the present case, plaintiff has presented evidence of being exposed to harassment, dunning, disparagement of credit, and incurring liability as a result of a dispute between the health care provider and the insurer.

Plaintiff also argues that a rule requiring that the insured first to be sued by a medical provider

for nonpayment before an injury is said to have occurred could expose an insured to an unprotected five years of liability. This argument has merit. An insured has only one year in which to file a claim for benefits while a medical provider has six years in which to file suit for nonpayment of a bill. The majority opinion summarily dismisses this argument stating plaintiff has failed to allege or provide any evidence to suggest this has happened. However, contrary to the majority's finding, the record clearly shows support for plaintiff's argument. Defendant's answer raised such an affirmative defense, stating:

> 1. That Plaintiff's claim is barred in whole or in part by the applicable Statute of Limitations including the one year back rule pursuant to [MCL 500.3145; MSA 24.13145].

The Court in *McGill* and the majority seem to place great reliance on the insurer's "agreement" to defend and indemnify its insureds against suits filed by medical providers and to further protect the insureds from damaged credit ratings caused by the nonpayment of medical bills. My review of *McGill* and the record herein has revealed no such "agreement" between the insurers and their insureds or anyone else. Any such assertions are nothing more than unenforceable promises to do the right thing if an insurer's insureds suffer damages from its breach of its written contract of insurance. To deny an insured access to our courts on the basis of such an unenforceable promise is a denial of due process and a serious impairment of an insured's contractual rights. No reasonable person would suggest that insurers should pay health care charges incurred by their insureds regardless of whether the charges are reasonable

or the services necessary. However, to forge a judicial solution that allows an insurer immunity from suit for breach of contract based upon its unilateral determination of which health care charges are reasonable and what medical services are necessary is an unwise intrusion into a domain traditionally governed by the Legislature. The holding in *McGill* ignores well-established contract law and current case law governing summary dispositions under MCR 2.116(C)(8) and (10).

This Court in *McGill, supra* at 408, holds its interpretation of § 3107 enforces the Legislature's intent to "place a check on health care providers who have no incentive to keep the doctor bill at a minimum." The Court's myopic view totally ignores the rights of an insured under the no-fault law and the intent of the Legislature in passing the law. As explained in *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978):

The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, *adequate, and prompt reparation for certain economic losses.* The Legislature believed this goal could be most effectively achieved through a system of compulsory insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state. [Emphasis added.]

Although the holding in *McGill* protects the insurance carriers from paying unreasonable medical charges and unnecessary services, it does so by placing the insured in harm's way. In order to expose unreasonable medical expenses, the insured must be subjected to multiple lawsuits by various medical providers. Thus, the injured insured party must not only endure the pain and suffering resulting from the accident but must further endure

the stress of being sued and dunned by the very medical providers relied upon to make them well, as well as the possibility of being refused future medical treatment by those same providers.

In finding the law constitutional in *Shavers,* the Court found the no-fault law an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The Court further reasoned at 623:

> By partially abolishing tort liability to those who suffer personal injuries as a result of motor vehicle accidents, the act may lessen the number of motor vehicle personal injury tort suits in the courts. The *prompt* availability of compensation for economic losses may relieve the undereducated or those with lower income from the pressure— "legal" or economic—to settle serious claims prematurely and for less than an equitable amount. [Emphasis added.]

The holding of *McGill* and of the majority herein does not further the intent of the Legislature but is clearly contrary to its goals.

I would reverse and order the parties to trial with regard to the issue of reasonable charges and necessary services.