*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

TYNINA FLOWERS,

Plaintiff-Appellee,

v

KEVIN WILSON and CHERI MICHELLA PETRI,

Defendants,

and

AUTO CLUB INSURANCE ASSOCIATION and
MEMBERSELECT INSURANCE COMPANY,

Defendants-Appellants.

UNPUBLISHED
September 22, 2022

No. 354436
Wayne Circuit Court
LC No. 18-015328-NI

Before: RONAYNE KRAUSE, P.J., and JANSEN and SWARTZLE, JJ.

SWARTZLE, J. (*concurring*).

I concur with the majority's opinion and judgment. I write separately to make clear that but-for the continuing viability of *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577; 543 NW2d 42 (1995), overruled on other grounds by *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), on the dispositive issue here, I would affirm.

As explained by the majority,

In *LaMothe*, the insurer paid only the medical expenses it deemed reasonable under the no-fault act so the insured sued his insurer for the unpaid balance. *LaMothe*, 214 Mich App at 579-580. The insurer promised to "fully defend and indemnify the insured from liability for necessary services priced in excess of what the insurer considers to be reasonable and customary." *Id*. at 583. The *LaMothe* Court concluded that this promise was legally enforceable "regardless of the period of limitation in the policy that controls presentment of claims to the insurer" and,

therefore, the plaintiff was not harmed by the insurer's actions, which required dismissal of the plaintiff's case. *Id*. at 582-585 and 585 n 5. [Maj op at __.]

Thus, under *LaMothe*, so long as the insurer promised to defend and indemnify the insured patient against the medical provider's attempts to obtain payment, the insured patient could not pursue a viable claim against the insurer related to any unpaid bill.

In arriving at this conclusion, both *LaMothe* and its predecessor, *McGill v Auto Ass'n of Mich*, 207 Mich App 402; 526 NW2d 12 (1994), placed considerable emphasis on the statutory duty of an insurer to pay only "reasonable" charges under the state's no-fault act. MCL 500.3107. Based on this, the panels in the two cases concluded that it made sense that insurers would audit medical bills and pay only what the insurers considered were reasonable charges. And, following this line of reasoning, the panels further concluded that providers and patients could not expect that insurers would pay in full every charge for every service, regardless of the reasonableness of the charge or the necessity of the service.

Fair enough. But what *LaMothe* and *McGill* both failed to recognize was that medical providers have been under a similar statutory duty to charge only "reasonable" fees for necessary services provided. See MCL 500.3157 (1994 and 1995) and MCL 500.3157(1) (current). Thus, both sides of the payment equation under the no-fault act—the provider and the insurer—have reciprocal statutory duties to charge and pay only "reasonable" fees. The panels in each case appeared to presume that the insurer was just fulfilling its statutory obligation, but there was no similar presumption that the provider was just fulfilling its statutory obligation as well. Moreover, in *LaMothe*, the majority expressly concluded that the insurer had, *in fact*, paid "those charges *reasonably* incurred for *reasonably* necessary products, services, and accommodations for plaintiff's care." 214 Mich App at 581-582. Yet, this was one of the key factual claims in dispute—i.e., whether the insurer had paid for reasonable charges—and the majority made an inappropriate finding of fact on a motion for summary disposition under MCR 2.116(C)(10).

Courts have cited and followed *Lamothe* and *McGill* since the mid-1990s. See, e.g., *United States Fid & Guar Co v Michigan Catastrophic Claims Ass'n*, 484 Mich 1, 18; 795 NW2d 101, 110 (2009); *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 457; 814 NW2d 670 (2012). Although recent changes to the no-fault act permit a medical provider to sue an insurer directly, MCL 500.3112; *Spectrum Health Hosps v Mich Assigned Claims Plan*, 330 Mich App 21, 28 n 4; 944 NW2d 412 (2019), *LaMothe* and *McGill* continue to bar the insured patient from the courthouse. An insured patient is even limited in her ability to contract around *LaMothe* and *McGill*. See, e.g., MCL 500.3143 (dealing with an assignment related to future benefits); *Bronson Health Care Group, Inc, v USAA Cas Ins Co*, 335 Mich App 25; 966 NW2d 393 (2020).

Thus, the insured patient remains caught in the middle between, on the one hand, providers who demand payment at the risk of lost services, lawsuits, or collection agencies, and, on the other hand, insurers who refuse payment.

To be clear—none of this is to say that the insurer is necessarily wrong in the instant case. Auto Club might well have paid every reasonable fee charged for every necessary service received by plaintiff. But we cannot know this at the pleading stage. MCR 2.116(C)(8). The better approach, in my opinion, would be to let the factual dispute about the reasonableness of bills play

out in litigation, rather than to assume that (1) the insurer paid reasonable charges, but (2) the provider did not charge reasonable fees for necessary services.

As to an insurer's promise to defend and indemnify an insured patient—the key feature that short circuits the patient's suit against the insurer—the details of the promise are universally scant, at least as recounted in case law. So, for example, (1) if the insured patient is subsequently sued by a provider for an unpaid bill, will the insurer let the patient hire an attorney of *her choice* and still pay for the cost of that attorney? Or, will the insurer require that the patient use an attorney of its choosing? (2) If the insured patient believes that the unpaid bill was for a necessary service reasonably priced, and that patient admits this in her answer to a provider's lawsuit against her, will the insurer then accept the admission and cover the bill in full? (3) How will the insurer, in actuality, rehabilitate an insured patient's decimated credit score such that the patient's credit is no worse than what it was before significant medical bills went unpaid? Will the insurer, for example, fund a patient's lawsuit against a credit bureau under the Fair Credit Reporting Act or similar consumer-protection law? (4) And, as a final example, if the insured patient needs a particular service but its medical provider refuses to provide the service because of unpaid bills, will the insurer assist the insured (and pay any necessary expenses) in finding equivalent replacement services?

There are too many unanswered questions and missing details to leave enforceability of the promise on future application of judicial and promissory estoppel. Instead, if *LaMothe* and *McGill* were set aside, the insured patient could pursue her rights in the courthouse like any other party with a legal interest. This would leave open the option for the insurer to defend and indemnify the insured patient through a *negotiated* (rather than forced) settlement.

With the recent changes to this state's no-fault regime, 2019 PA 21, now would be an opportune time for our Supreme Court to consider whether *LaMothe* and *McGill* should remain binding precedent. Insured patients have a cognizable interest in having their medical bills paid, and they should have the opportunity to have their own day in court.

Until and unless this happens, however, lower courts remain bound by *LaMothe* and *McGill*. Given this, I concur in the majority's opinion and judgment.


/s/ Brock A. Swartzle