*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF POPE.

TROY J. MILLS,

                Appellant,

v

LISA J. FINK,

                Appellee.

UNPUBLISHED
November 14, 2024
11:30 AM

No. 369865
Lapeer Probate Court
LC No. 20-041145-DE

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

In this action involving the estate of Dolores Maxine Pope (the decedent), appellant, Troy J. Mills, appeals as of right the trial court's order granting summary disposition to appellee, Lisa J. Fink,[1] and formally admitting the decedent's April 17, 2009 will to probate. We affirm.

## I. BACKGROUND

This case arises out of the death of the decedent on July 24, 2023, and the decedent's disinheritance of Mills. On August 18, 2023, Fink filed an application as the daughter, heir, and devisee of decedent, requesting: (1) informal probate of the decedent's will and (2) appointment of Fink to be the personal representative. Fink attached the will to the application for admission to probate. Fink also filed a testimony-to-identify-heirs form, indicating Fink was the decedent's daughter, the decedent did not leave a surviving spouse, the decedent had two children (Fink and

---

[1] Fink moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). It is unclear under which subsection the trial court granted the motion; however, because the trial court went beyond the pleadings to decide the motion, the proper standard of review is under MCR 2.116(C)(10).

-1-

Mills), the decedent left a will, and all devisees are heirs.  The will was admitted to informal probate and Fink was appointed personal representative.

The will was signed by the decedent and two witnesses, Mary Ann Garfi and Dawn R. Kelly.  The will was drafted by attorney Curt Ollikainen.  The decedent's will stated, in pertinent part:

## ARTICLE I

### FAMILY

My Spouse is JOSEPH F. POPE, JR. . . .  My children who are not from this marriage are [Fink] and [Mills].  My stepchild is TALISHA BERNIER.  In addition, I have another stepchild named KATRINA POPE who has predeceased me who has descendants.

I deliberately make no provision in my will for my stepchild TALISHA BERNIER, my child [Mills], or the descendants of my deceased stepchild KATRINA POPE.  I also make no provision in my will for any descendants of TALISHA BERNIER or [Mills] for reasons personal to me. . . .

\* \* \*

## ARTICLE III

### PERSONAL REPRESENTATIVE

I appoint my Spouse as my Personal Representative.  If my Spouse is unwilling or unable to act, then I name [Fink] to act as my Personal Representative. . . .

\* \* \*

## ARTICLE V

### DISTRIBUTION OF RESIDUE

Section 1.  I direct that the residue of my estate be given to my Spouse, if my Spouse survives me.

Section 2.  If my Spouse fails to survive me, I direct that the residue of my estate be given to my child, [Fink]. . . .

\* \* \*

I, DOLORES M. POPE, the Testatrix sign my name to this instrument on April 17, 2009.  I certify or declare under penalty of perjury under the law of the state of Michigan that the statements in this document are true.  I declare that this document is my will; that I sign it willingly or willingly direct another to sign for

me; that I execute it as my voluntary act for the purpose expressed in this will; and that I am eighteen years of age or older, of sound mind, and under no constraint or undue influence.

*   *   *

We, Mary Ann Garfi and Dawn R. Kelly, the witnesses, sign our names to this document and certify or declare under penalty of perjury under the law of the state of Michigan that all of the following statements are true; the individual signing the document as the Testatrix executes the document as her will, signs it willingly or willingly directs another to sign for her, and executes it as her voluntary act for the purposes expressed in this will; each of us, in the presence and hearing of DOLORES M. POPE signs this will as witness to the Testatrix's signing; and, to the best of our knowledge, the Testatrix is eighteen years of age or older, of sound mind, and under no constraint or undue influence.

Mills filed a petition to set aside the informal probate of the will, alleging, "the instrument was not executed in accordance with legal formalities for a valid will . . . , specifically MCL 700.2502(1), and is not the will of Decedent." Mills argued the will was not a self-proving will under MCL 700.2504. Fink objected to the petition, asserting the will was validly executed and met the statutory requirements. The trial court entered an order opening discovery "limited to issues surrounding the Will such as drafting, execution and knowledge of signing."

During discovery, Garfi, Kelly, and Ollikainen were deposed. Ollikainen testified that he drafted the will for the decedent after interviewing the decedent and her spouse by telephone and later meeting them at his office to sign documents. Ollikainen did not have "any [independent] recollection" of his meeting with the decedent and her spouse, which was "13 or 14 years ago," but reviewed his notes to recall the events surrounding the drafting of the decedent's will. Ollikainen did not recall if he was in the room with the decedent when she signed documents. Ollikainen testified remembering that "[the decedent] had two children, a boy and a girl, and that [the decedent] wanted to disinherit the boy and leave everything to the daughter." Ollikainen's notes included a "reference that [he] found them to be mentally competent."

Ollikainen explained that in drafting the will, he used a "document assembly program," or an "internal program," and he "customized" the document to include the name of the disinherited child. The program "did not install page numbers." Ollikainen recognized the witness signatures on the will as "both individuals that [he] worked with" but that he had no independent recollection of the decedent signing. Ollikainen explained that his drafting procedure did not include the witnesses initialing each page of the document. Ollikainen found nothing unusual about the will and testified that the distribution scheme in the will "matche[d]" his notes "from that time in terms of the distribution scheme that the [] [decedent] wanted."

Garfi, who worked as Ollikainen's paralegal at the time the will was drafted as well as one of the signing witnesses, was also deposed. She did not recall meeting the decedent or signing the will, but recognized her signature as a witness on the decedent's will. Garfi reviewed the decedent's will and explained:

[I]t's our form of will. This is a standard of what we prepared or the attorneys prepared. It looks just like our wills. The wording in it is what we used in our wills. So, I would say yes, that [those other pages attached to the signature page] go with the signature page.

Kelly also worked for Ollikainen at the time the will was drafted. While she did not recall meeting the decedent or signing the will, Kelly recognized her signature as a witness on the decedent's will. She testified that there was no procedure to "initial the other pages" and did not recall if attorneys numbered the pages of wills.

At the close of discovery, Fink moved for summary disposition, under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact), arguing that the decedent's will met the legal formalities for a valid will in Michigan under MCL 700.2502(1) and that Mills failed to state a claim under MCR 2.116(C)(8). Fink requested that the will be admitted to probate. Mills replied to Fink's motion for summary disposition, arguing the will was not self-proving under MCL 700.2504, Fink did not meet the burden of proving due execution of the will, and there remained genuine issues of material fact regarding the chain of custody of the will. Mills also moved separately for summary disposition, under MCR 2.116(C)(8), arguing the instrument offered to probate by Fink was not a self-proving will. Fink replied, stating the issue was previously ruled on by the trial court and now moot.

The trial court held a hearing on both Mills' and Fink's competing motions for summary disposition. Following the hearing, the trial court entered an order granting Mills' motion for summary disposition, finding that the decedent's will was "not a self-proved will" under MCL 700.2504. However, the trial court also granted Fink's motion for summary disposition, deciding that decedent's will, "dated April 17, 2009, is a properly executed will" under MCL 700.2502(1) and "formally admitted" the will to probate. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

Fink moved for summary disposition under MCR 2.116(C)(8) and (C)(10). It is unclear under which subsection the trial court granted the motion. However, "where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings . . . MCR 2.116(C)(10) is the appropriate basis for review." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). In this case, the parties and the trial court relied on evidence outside the pleadings, namely the deposition testimony from Ollikainen, Kelly, and Garfi. Specifically, the trial court "accepted the testimony submitted" and, "based on the testimony of the witnesses," was "satisfied that this is a valid [w]ill." MCR 2.116(C)(10) provides the basis for this Court's review.

"We review de novo a probate court's decision regarding a motion for summary disposition." *In re Attia Estate*, 317 Mich App 705, 709; 895 NW2d 564 (2016). "A de-novo review means [this Court] review[s] the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

-4-

A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citations omitted).]

"If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Miller Estate v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020). "Statutory interpretation is a question of law, which this Court also reviews de novo." *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010).

## B. THE ESTATES AND PROTECTED INDIVIDUALS CODE (EPIC)

"The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, governs this case. The provisions in EPIC are to be construed liberally and applied to promote its purposes and policies, including '[t]o discover and make effective a decedent's intent in distribution of the decedent's property.'" *Attia Estate*, 317 Mich App at 709, quoting MCL 700.1201(b). MCL 700.2502 governs the validity of a will and states:

(1) Subject to section 1202, and except as provided in subsection (2) and in [MCL 700.2503, MCL 700.2506, and MCL 700.2513], a will is valid only if it is all of the following:

(a) In writing.

(b) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction.

(c) Signed by at least 2 individuals, each of whom signed within a reasonable time after he or she witnessed either the signing of the will as described in subdivision (b) or the testator's acknowledgment of that signature or acknowledgment of the will. [MCL 700.2502(1) (footnotes omitted).]

MCL 700.3407(1)(b) states: "A proponent of a will has the burden of establishing prima facie proof of due execution in all cases and, if the proponent is also a petitioner, prima facie proof of death and venue." MCL 700.3407(1)(d) states: "A party has the ultimate burden of persuasion as to a matter with respect to which the party has the initial burden of proof."

## C. VALIDITY OF DECEDENT'S SIGNATURE

In this appeal, Mills argues there was a genuine issue of material fact as to the validity of the decedent's will, including whether the decedent signed the will. According to Mills, Fink did not prove due execution of the will, precluding the trial court from granting summary disposition in favor of Fink. We disagree. There is no question the will was in writing, which satisfies

MCL 700.2502(1)(a). When Fink, as personal representative, applied for informal probate, she attached the decedent's will to the application. The will was four pages and included several provisions. As to MCL 700.2502(1)(b), the will included the decedent's signature on the final page. Immediately preceding the decedent's signature, on the third page, the decedent certified and declared "the statements in this document are true," "that this document is my will; that I sign it willingly," "I execute it as my voluntary act," and "I am eighteen years of age or older, of sound mind, and under no constraint or undue influence."

As to MCL 700.2502(1)(c), the will was signed by two individuals, Kelly and Garfi, who witnessed the decedent sign the will. Immediately preceding the signatures of Kelly and Garfi, on the fourth page, Kelly and Garfi certified and declared "the individual signing the document as the Testatrix executes the document as her will, signs it willingly . . . and executes it as her voluntary act." Kelly and Garfi also certified and declared, "each of us, in the presence and hearing of [the decedent] signs this will as witness to the Testatrix's signing; and . . . Testatrix is eighteen years of age or older, of sound mind, and under no constraint or undue influence."

In determining no genuine issues of material fact existed, the trial court noted there was a valid will under MCL 700.2502(1) "based on the testimony of witnesses." The trial court noted the "terms of the [w]ill follow in a chronological order. [The decedent] did sign it. It is dated April 17, 2009. . . ." The trial court continued:

> There is really no argument that she wasn't competent. There's no argument of undue influence. The document is labeled as her Last Will and Testament. The document is witnessed . . . by two witnesses who signed it, and their statement, in her presence.

The record evidence supports this conclusion. Ollikainen, the drafter of the decedent's will, interviewed the decedent to determine her estate planning goals in 2009. As stated, Ollikainen recalled that the decedent sought to disinherit Mills.

He explained how the decedent's will was "customized" to include the name of the disinherited child and that the decedent's will was "laid out typically as a UAW will in terms of how it was formatted, the ordering of the paragraphs. It's nothing unusual about that, whatsoever." The record further included the testimony of Garfi, who explained the procedures used when drafting a client's will, and noted Ollikainen "always met with the client right before signing to go over the documents. . . ." Garfi clarified, after a will was signed, it would be stapled in two places to "a backing," one at the top left and one at the top right of the document. Upon reviewing the decedent's will, Garfi noted: "[I]t's our form of will. This is a standard of what we . . . prepared. It looks just like our wills. The wording in it is what we used in our wills."

Kelly's testimony further supports the trial court's conclusion. She explained the procedure used for drafting wills and was familiar with the formatting of the wills, execution requirements, and how the wills were maintained. Ollikainen recognized both witness signatures on the decedent's will as "both individuals that [he] worked with." Garfi and Kelly each recognized their respective signatures on the will.

## D. VALIDITY OF WITNESS SIGNATURES AND OTHER REQUIREMENTS

Mills argues neither Kelly or Garfi recall signing the decedent's will, creating a question of fact as to its validity. This argument lacks merit. "[W]e know of no rule of law which makes the probate of a will depend upon the recollection or even the veracity of a subscribing witness." *In re Clark Estate*, 237 Mich App 387, 395; 603 NW2d 290 (1999) (quotation marks and citation omitted). Although the witnesses did not recall meeting the decedent or signing her will, these events took place in 2009, fifteen years ago. Kelly explained that at that time, she did "three or four signings a day." As the trial court noted, "[t]he Court accepts the testimony submitted and while they don't remember a lot of details, that is not uncommon. It's common and acceptable evidence and testimony for people to testify as to their common practice and procedure." Aside from not recalling the signing, Mills failed to set forth any evidence suggesting the will did not meet the statutory requirements delineated above.

Mills further contends the lack of page numbers on the will casts doubt on its validity. However, the trial court addressed this point, noting there was testimony "they didn't use page numbers." The record supports the program at GM-UAW Legal Services used by Ollikainen "did not install page numbers." Kelly did not recall if attorneys numbered the pages of wills. Further, contrary to Mills's assertion, Ollikainen's procedure did not include the witnesses initialing each page of the document. Kelly clarified there was no procedure to "initial the other pages." Mills argues that because the substantive pages of the will were separate from the signature page, there is a genuine issue of fact whether the decedent signed the will. This argument also lacks merit. Garfi testified: "I would say yes, that [those other pages attached to the signature page] go with the signature page." Garfi clarified: "I don't know if I was the one who made the copies" but they "would be the same as the original."

Next, Mills' argument that an evidentiary hearing was required with at least one attesting witnesses' testimony to prove due execution under MCL 700.3406(1) is without merit. The trial court addressed this issue at the motion hearing, stating:

> The Court is satisfied that this is not an evidentiary hearing. It is a Summary Disposition that . . . the witnesses to this Will[] did testify as to their common . . . procedure, that they had notes that verified that [the decedent] did sign this in their presence and their statement is that she . . . was of sound mind and under no . . . constraint or undue influence and is her voluntary act.

MCL 700.3406(1) does not explicitly require an evidentiary hearing, as Mills asserts. MCL 700.3406(1) also states: "Due execution of an attested or unattested will may be proved by other evidence." The trial court did not err by accepting the testimony on a motion for summary disposition, which allows the trial court to consider evidence beyond the pleadings, such as depositions. See MCR 2.116(G)(2). In this case, due execution was proven by the testimony of Kelly and Garfi.

## E. EVIDENCE OF FRAUD

Finally, although not included in the petition itself, Mills made arguments in the trial court and on appeal that the decedent's will was fraudulent. This claim lacks merit.

MCR 2.112(B)(1) states, "[i]n allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." "General allegations will not suffice to state a fraud claim." *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 586; 543 NW2d 42 (1995), overruled on other grounds by *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), superseded by statute as stated in *Van Dyke Spinal Rehab Ctr, PLLC v USA Underwriters*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 365848). In support of this claim, Mills offers his affidavit. Mills stated he lived with the decedent "for almost a year prior to her death," took care of the decedent, and maintained her property. After the decedent's death, Fink "stormed into the house . . . and dragged the safe across the floor and out of the house." Mills stated the decedent told him "prior to her death," that Mills and Fink "were the beneficiaries of [the decedent's] property." Fink told Mills "the purported will was found in the safe which she took from the house." The only statement that gives us pause is that Mills believed "based on what my mother told me" that "any wills [the decedent] prepared left things to [Fink] and I equally." But this fails to rise to the level of particularity required under the court rules. What did mother say prior to her death to lead Fink to believe that? Further, the decedent's will was made in 2009, and the decedent passed away in 2023. Even if she allegedly made statements as asserted by Mills, there is no evidence that the will was rescinded or that another (more recent) will was made.

Because Mills failed to sufficiently plead any allegation of fraud, his affidavit is insufficient to create a genuine issue of material fact as to the validity of the will.

### III. CONCLUSION

The trial court did not erroneously resolve factual disputes when deciding Fink's motion for summary disposition, and did not err by concluding a genuine issue of material fact did not exist as to the validity of the will, which was admitted to probate. Mills is not entitled to reversal of the trial court's order because the motion was properly granted under MCR 2.116(C)(10).

Affirmed.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young

-8-